Glen Estill MUSIC, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant
in Error.

No. A–13488.

Court of Criminal Appeals of Oklahoma.

Nov. 18, 1964.

Chuck Goodwin, Leslie Pain, of Barney & Pain, Anadarko, for plaintiff in error.

Charles Nesbitt, Atty. Gen., and Charles L. Owens, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Glen Estill Music, plaintiff in error, hereinafter referred to as defendant, was charged by Information in the County Court of Caddo County with the crime of Driving a

Motor Vehicle While Under the Influence of Intoxicating Liquor. He was tried by a jury, found guilty, and his punishment assessed at $100.00 fine and 30 days in the county jail. From that judgment and sentence defendant filed his appeal in this Court within the time prescribed by law. It will be necessary to briefly outline the facts of the case.

The Highway Patrol was called to investigate a one car accident south of Carnegie in Caddo County. Defendant's car was overturned on the shoulder of the highway. There were no other vehicles involved, and no injury. Defendant was subsequently booked and charged with Drunk Driving. One of the witnesses, Floyd Steckman, testified for the State as follows:

"Q. Did you observe anything when you were going home?

"A. Well, I run upon a white sixty-one (61) or sixty-two (62) Chevy, just driving up behind it. I wouldn't say if it was a 61 or 62, about two miles west of Apache and I followed it thirteen miles west and the car was weaving back and forth across the road. I wouldn't say the man was drunk, had a loose steering gear or what, but he was weaving.

"Q. Did you have—did you get close enough to get the tag number of this car?

"A. I flipped my lights on bright and I drove up behind him and his tag number was CN 8878.

"Q. You testified that this car was weaving, would you explain to the jury what you mean by weaving.

"A. Well, maybe for a half a mile he would go straight down the road, maybe he would take a notion that he wanted to pull over on the left side, then he would go for a quarter of a mile then he would come back.

"Q. Did he ever run off the road?

"A. Well, there was one time about four miles west he run off the edge of the road, on the right hand side.

"Q. Is that the only time he ran off the road?

"A. That is the only time I seen him.

"Q. How fast was this car going?

"A. I'd say in the neighborhood of 40 or 45.

"Q. Do you normally drive that speed yourself?

"A. No, I most generally drive 50 or 55. I drive the speed limit. I'll put it that way, I drive the speed limit.

"Q. Why didn't you pass this car?

"A. Well, I was just kind of afraid to because of it weaving back and forth. Maybe at the time I would be ready to pass he would pull out. About a mile before I got to the corner I passed him.

"Q. What did you do after that?

"A. I went home and ate supper.

"Q. Did you do anything after that?

"A. The telephone rang and a neighbor friend over at Carnegie said they had had a wreck just south of Carnegie. She was fixing to come over to our house for supper—said she wasn't coming.

"Q. What did you do upon hearing this?

"A. Well, I said, I told my wife, I bet that is the same guy I followed home from Apache. I just got in my car and went up there and it was."

The other witness for the state was the Highway Patrol Trooper H. F. Brundridge, who testified in substance, that he was dispatched to the scene of an accident south of Carnegie in Caddo County where he found a 1962 White Chevrolet bearing Oklahoma Tag No. CN 8878 overturned on the shoulder of the highway. That he found the defendant at the scene of this one vehicle accident, asked him if he was the driver and defendant replied that he was. He testified that he was walking around the scene and did stagger occasionally both on the shoulder and on the highway. Defendant advised him that his right front

wheel had locked and caused the accident. The trooper testified that he examined ALL FOUR WHEELS and found them all free. He further testified that after the wrecker turned the car back up, he went back to check the skid marks and there was no such indication that a wheel had locked or brakes had been applied. He further testified the car was out of control before it turned over. He stated that he had placed the defendant in his car, and after they started back to town, defendant seemed more intoxicated than when he had first observed him in the cool air; and that he smelled intoxicating liquor on his breath.

The defendant did not testify in his own behalf, but put on first the testimony of George Kaufman, which was in substance, that as he was eating supper on the date in question he received a telephone call from defendant from a service station near the scene of his accident. Acting in connection with this call, the witness called a Mack Yoakum, who had a wrecker service, to go and assist defendant. The witness then proceeded in his car to pick up defendant and to return to the scene of the accident. He stated that from this personal contact of approximately five minutes, in his opinion, the defendant was not intoxicated.

The witness Yoakum also testified that, from his observance of, and conversation with, defendant at the scene of the accident, he was of the opinion that defendant was not under the influence.

The next witness, an employee of Mack Yoakum, one Pete Jesperson, testified that he examined the automobile of defendant after it was brought to the garage and he found the right front wheel to be defective, such defect causing the vehicle to pull to the right when the brakes were applied.

■ Defendant now comes to this Court asserting 3 main propositions of error, the first being that the trial court erred in its rulings on the state's objections to defendant's closing argument, depriving defendant of his right to fair comment on the evidence.

The precise section of the argument complained of is the following:

"* * * and in my opinion, ladies and gentlemen, Mr. Brundridge did this defendant a great injustice by even arresting him and putting him in the patrol car and bringing him over here to jail."

At this point the County Attorney objected, as follows:

"MR. UPCHURCH: Your Honor, we're going to object to Mr. Chuck Goodwin's opinion, unless it is based upon the evidence in this case.

"THE COURT: Mr. Goodwin, you're not testifying."

It is to be noted that the Court never instructed the jury to disregard this little bit of testimony on the part of counsel, but simply told him, later in the discussion, to qualify his opinion with a statement to the effect that such opinion was based on evidence presented from the witness stand, *which he did*. We do not feel after a further examination of the whole argument that this minor objection prejudiced the defendant when viewed in its entirety.

■ All of the cases cited by both defendant and the state refer to the remarks in the argument of the county attorney. Whether it is the county attorney or the defense counsel, the following rule applies, as stated in Young v. State, Okl.Cr. 373 P.2d 273, 278:

"The prosecuting attorney should not express his private opinion as to defendant's guilt * * * but * * * may state his conclusion based on the evidence."

The trial court merely helped the defense counsel qualify his remark in the instant case.

■ In defendant's second proposition, he asserts that the evidence was insufficient to sustain the verdict and judgment.

This Court has ruled on this question many times, and consistently held, as in the

case of Maxwell v. State, Okl.Cr. 360 P.2d 959:

"Where there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty as charged, Court of Criminal Appeals will not interfere with verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts."

The jury heard the testimony and had an opportunity to observe the witnesses and judge their credibility. This Court has many times refused to weigh the evidence and assume the responsibility of the jury.

The conflict in the testimony presented a question for the jury, and the trial court was not in error in overruling the demurrer to the evidence.

Defendant's third and final proposition is that the sentence, under this record is manifestly excessive as to deny justice to defendant. He specifically refers to the reference by the County Attorney to vodka in the direct examination of Mr. Kaufman on rebuttal. However, no objection was interposed by defendant nor exception saved. This Court has held time and again, as in the early case of Baker v. State, 9 Okl.Cr. 47, 130 P. 524:

"It is the duty of counsel to raise, at the proper time and in the proper manner, all objections to the proceedings, and save proper exceptions. When this is not done, they are treated as waived, and there are few exceptions to this rule."

Counsel further asserts that the sentence imposed was excessive. The jury did not impose the maximum sentence in this case, and the fact that defendant has a good job is no excuse for breaking the law.

There being no error meritorious enough to warrant reversal, the judgment and sentence of the trial court is hereby affirmed.

JOHNSON, P. J., and BUSSEY, J., concur.