**Samuel C. HAWKINS, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. A–17920.**

Court of Criminal Appeals of Oklahoma.

May 21, 1973.

Philip F. Horning, Arlene Tucker, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Kenneth L. Delashaw, Jr., Legal Intern, for appellee.

## OPINION

BLISS, Presiding Judge:

In the District Court of Oklahoma County, Case No. CRF–72–194, appellant, Samuel C. Hawkins, hereinafter referred to as defendant, was charged, tried and convicted for the offense of Attempted Burglary in the First Degree. His punishment was fixed at five (5) years imprisonment. From that judgment and sentence, à timely appeal has been perfected to this Court.

Arnold Hall testified that on January 31, 1972, he and his wife resided at apartment 2507 B, Coach Light Apartments. At approximately 8:30 p.m. on that evening, he and his wife retired and were awakened by police officers at approximately 12:30 a. m. the following morning. Upon being awakened, he was informed someone had attempted to enter his apartment through the back bedroom window. Hall testified when he retired for the evening he raised this bedroom window approximately six inches and noticed the screen was intact at that time. After being awakened by the officer, he observed the screen had been removed from the window. Finally, he stated at the time of the alleged attempted entry no lights were burning and the drapes were drawn in the apartment. The room where the entry was alleged to have been attempted was dark.

Mary Mayhew testified she was a resident of apartment E of the above mentioned complex on the date of this incident. At the above mentioned time and date, she and Mr. Joe Fee were inside of her apartment. Mayhew testified while standing next to the bedroom window in her second story apartment, she observed a person walk across the lawn in the center of the complex and proceed to the east window of the south side of the building, directly across from her apartment. She watched this person for several minutes as he stood at the window and then observed him move away carrying a window screen to an area between the apartment house buildings. Mayhew testified she brought these observations to the attention of Joe Fee.

Joe Fee testified he had been visiting Mayhew in her apartment on the night in question and she had called his attention to the person she saw outside. He testified he watched the person at the window of the Hall's apartment for a short period and then left his place at Mayhew's living room window to call the police. As he was calling, Mayhew told him the person had taken the window screen off. He then gave the telephone to her to complete the call and went outside. He testified he walked down stairs located in the breezeway between two of the buildings on Mayhew's side of the complex. He stationed himself behind one building at its corner to keep from being seen. From his vantage point, he observed the person put the window screen behind an electrical unit some distance from the Hall's apartment and then return to stand at the bedroom window where he had first been observed. After he observed the person return to the window, Fee testified he moved away from this building to stand in the apartment driveway. He stood in the driveway waiting for the police to arrive and he again observed this person walk away from the window, walking in a northerly direction. Upon the arrival of the police car, this person turned and then fled. Fee and the officers pursued him and apprehended the defendant between two apartments in the complex.

Ted Askew, a Midwest City Police Officer, testified that at approximately 12:25 a.m. on the above date, he arrived at the apartment house parking lot and observed a person flee through the complex in a northwesterly direction. He, aided by Fee, pursued this person and apprehended him at the complex. Askew stated the person whom he apprehended was defendant. Further, Askew testified as to defendant's dress on that evening stating defendant was wearing a brown sock on his right hand and blue sock on his left. Upon defendant's apprehension, a frisk search was conducted. As a result of this search, a two-inch red-handled screwdriver and an electrical cord, similar to an extension cord, were removed from defendant's overcoat pocket. Askew stated on cross-examination he never observed defendant attempt to enter the bedroom window in question. Thereafter, the State rested.

Dr. Larry Prater, a licensed physician specializing in psychiatry, testified that on February 15, 1972, he administered several tests to the defendant to determine if defendant had emotional problems. The result of this testing indicated psychological

problems of a sexual origin. From the testing and observations Dr. Prater made from group and private interviews, he determined defendant to be a voyeur. Generally, Prater stated the acts of the defendant revealed in evidence were consistent with the activities of a voyeur. Further, he stated a voyeur is not aware of the risk involved in his activities and does not take into account the probability of being caught at these activities. This evidence was submitted on behalf of the defense in an effort to establish the defendant was not attempting to burglarize the residence but engaging in an act of voyeurism. Thereafter, the Defense rested.

In defense counsel's brief, three propositions of error are submitted. Those propositions will not be considered in the same sequence as presented in defense counsel's brief. In defense counsel's second proposition, it is submitted the evidence is not sufficient to establish the offense of attempted burglary in the first degree. We will address ourselves to deciding the issues on that proposition first in this opinion.

■ In defense counsel's second proposition, he contends the evidence is insufficient to prove the elements of the offense of attempted burglary in the first degree. There are three essential elements in establishing the offense of attempted burglary. These elements are the intent to commit the offense, the performance of some act toward its commission, and failure of consummation. Ervin v. State, Okl.Cr., 351 P.2d 401. In charging an offense of attempted burglary, the above elements must be accompanied by an allegation in the Information establishing the defendant would have committed his entrance if he had not been frightened away, intercepted, or failed in the commission thereof for some specified reason. Place v. State, Okl.Cr., 300 P.2d 666. The required allegation establishing the defendant to be intercepted or prevented from consummating the act need not be proved by direct evidence but may be proved by circumstantial evidence. Allbright v. State, Okl.Cr., 496 P.2d 1196.

■ Essentially, defense counsel submits the uncontroverted evidence establishes defendant abandoned his effort to burglarize the premises. Consequently, no intent to commit the offense of Burglary in the First Degree has been established. Counsel submits Fee's testimony, which establishes the defendant was walking away from the window from which he removed the screen, at a point in time significantly prior to the arrival of police officers, is uncontroverted evidence of an abandonment. Consequently, the officers cannot be inferred to have intercepted the defendant in the commission of this offense negating defendant's intent to consummate the burglary. We do not agree defendant moving away from the window establishes uncontroverted proof of abandonment. Under the circumstances of the instant case, there is circumstantial evidence placing within the province of the jury the determination of whether defendant intended to consummate the act and was interrupted by a third party. The jury could have reasonably concluded in a study of all the evidence defendant only deviated from his plan of entry rather than permanently abandoning entry. Consequently, the question of whether the proof supports the proposition defendant intended to enter the apartment was properly decided upon evidence which the jury could reasonably and logically deduce defendant intended to consummate the offense and only deviated from his course not permanently abandoning it. Music v. State, Okl.Cr., 396 P.2d 894. Therefore, there is sufficient circumstantial evidence upon which the jury could have reasonably concluded defendant intended to commit the act but was intercepted by officers as alleged in the instant case in conformance with *Allbright,* supra. We therefore find this proposition to be without merit as the question of whether defendant intended to complete the act was properly submitted to the jury in the trial court's instruction number five.

■ In the defendant's first proposition, it is submitted the prosecutor's arguments are prejudicial. Counsel first submits, by

the following statement, the prosecutor commented upon the defendant's failure to testify at trial:

" * * * That man was caught in the act. There is no way for him to go. He just has no defense.

"He sat there. He didn't say anything to the officers that night. He didn't say a thing. He didn't tell the officers or Mr. Fee or the lady over there or anybody else about this window peeping. Well, I was just window peeping. I need some help. Would you all help me get it. I need psychiatric help.

"Did he ask for it? No. No, there is no evidence of what he said. The only thing that we have got here is what he goes out here by hearsay through his lawyers and goes out and tells the doctor." (Supp.Tr. 26)

Generally, arguments are to be construed in light of the evidence presented at trial. We find the above statement does not specifically refer to a comment upon defendant's failure to testify. It specifically refers to the fact the first presentation of the defense of voyeurism occurred at trial and was never brought to the attention of law enforcement officers prior to that time. Apparently, this argument is presented in an attempt to discredit the defendant's overall defense. It does not constitute a comment upon the defendant's failure to testify.

■ Additionally, defense counsel submits specific portions of closing arguments are erroneous arguing that they are inflammatory and prejudicial. We have carefully studied defendant's excellent brief and the arguments in the supplemental transcript and find none of these arguments to be fundamentally erroneous. We have repeatedly held that when an objectionable statement is made by the prosecuting attorney, it should be called to the attention of the court by timely objection, together with a request the jury be instructed to disregard the improper statement and in the event the objection is overruled, an exception should be taken to the ruling of the court, preserved and argued on a motion for new trial. When this is not done, the matter cannot be presented for the first time in the motion for new trial and petition in error on appeal. Overstreet v. State, Okl.Cr., 483 P.2d 738. Since defense counsel failed to object to these arguments in compliance with *Overstreet*, supra, he waived his right to complain about them on appeal.

■ The final proposition contends the punishment is excessive. We have repeatedly held that unless the punishment imposed shocks the conscience of this Court, we will not disturb the jury's verdict. Jackson v. State, Okl.Cr., 494 P.2d 358. The punishment imposed is within the range established by statute. The punishment does not shock this Court's conscience and for this reason we will not disturb the jury's assessment. We therefore find this proposition to be without merit.

The judgment and sentence is affirmed.

BUSSEY, J., concurs.

BRETT, J., dissents.