Lawrence Lee **BREEDLOVE**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–73–135.

Court of Criminal Appeals of Oklahoma.

July 25, 1974.

Stephen Jones, Mary E. Bane, Jones, Williams, Bane, Ray & Klingenberg, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Stan Chatman, Legal Intern, for appellee.

## OPINION

BLISS, Presiding Judge:

Appellant, Lawrence Lee Breedlove, hereinafter referred to as defendant, was charged in the District Court, Oklahoma County, Case No. CRF–72–1881, with the offense of Murder. Ray Charles Carolina, Karrole Donnie Wayne Draper and Wayne T. Glover were charged conjointly with him. On December 11, 1972, defendants, Breedlove, Carolina and Draper were tried before a jury and found guilty of the murder of Howard Siler, with the jury imposing the death penalty on all three defendants. On March 14, 1973, this Court commuted all three sentences to life imprisonment in line with the recent decisions of the United States Supreme Court. From said judgment and sentence defendant Breedlove has perfected a timely appeal to this Court.

The essential facts as set out in the defendant's brief and approved as reasonably accurate by the State are as follows: James E. Turk testified that he owned a grocery store located in 3200 North Western in Oklahoma City, Oklahoma. At approximately 6:00 p. m. on August 4, 1972, he left the store, being relieved by Howard Siler who was accompanied by his wife and six year old son. Shortly before 11:00 p. m., Mr. Turk received a phone call telling him that his store had been robbed. He returned to the store and discovered One Hundred Eighty-two Dollars ($182.00) in cash was missing from his cash register. He then identified State's exhibit No. 1 as a bank bag like the one he kept at his store, but which was missing after the robbery.

Bruce Alan Cain, a 13 year old boy, testified he and his father were driving past Turk's grocery on the evening of August 4 and he saw a white man and two black men inside the store. The white man was standing with his arms out to his side. Bruce told his father he thought the store was being robbed and his father drove around the block. This time Bruce saw two black men push the white man through a rear door. Bruce and his father drove home and the police were called. Bruce could not identify any of the defendants as being the black men in the store.

Officer Fred Weed of the Oklahoma City Police Department testified that on August 4, 1972, at approximately 11:10 p. m. he was dispatched to Turk's store. Upon entering the store he observed three persons lying in a rear storeroom. He identified the three persons as Howard Siler, Judy Siler and Chris Siler. Each had a gunshot wound in the rear of the head. Judy Siler was still alive while Chris and Howard were both dead. He found three spent .22 caliber cartridge casings near the three bodies. He further observed that there was no money in the cash register or Howard Siler's wallet.

Officer Tom Bevel of the Technical Investigation Department of the Oklahoma City Police Department testified that on the evening of August 4, 1972, he arrived at Turk's grocery and took several pictures of the scene. He also searched for fingerprints but was unable to find any he could relate to any of the defendants.

Lieutenant Don Rogers testified he was in charge of the Crime Lab for the Oklahoma City Police Department. On August 4 at approximately 11:35 p. m., he arrived at Turk's Grocery and received three spent .22 caliber cartridge cases. He subsequently received three bullets which were removed from the victims at the morgue. He delivered all items to Ray Lambert of the Oklahoma Crime Bureau.

Officer Jimmy L. Woodie testified that on August 7 he arrested defendant Carolina on suspicion of murder. Carolina was advised of his constitutional rights and he stated he understood same. Carolina then told Officer Woodie that he was present at

the store and knew the person who had done the shooting.

Officer Bill F. Snipes testified that on August 7 he interrogated Carolina, after giving him his Miranda warnings. Carolina related that he and three others robbed Turk's store. Carolina and the two others who entered the store with him were carrying guns. A man, woman and a small boy were shot during the robbery and Carolina advised the officer who fired the shots. After the robbery the four went to a woman's house and divided the money. Each of the men then gave the woman five dollars.

Officer Adam Knight testified that on August 7 he interrogated defendant Draper, after first advising him of his constitutional rights. Draper related four different versions of his whereabouts on the night of August 4, 1972. Draper, in his fourth version, related the following:

"A. He said that the suspects had come over to his girl friend's house and picked him up along with two other suspects and that this one suspect had plans already including a robbery up in the northwest part of town. He didn't know exactly where it was at. He said they drove up there and being in the area of 32nd and North Shartel the three of them, him and two other suspects walked into the store with him being the first one into the store. He said he walked up to the counter and asked the attendant for a pack of Winston cigarettes. He said that other suspect then walked around him towards the back of the store and pulled out a pistol and made a statement—I believe it was, 'This is a hold-up.' And, he was then told by the other suspect to take this woman and child into the back room, while the other suspect with the pistol, then walked behind the counter and started taking the money out of the register and placing it in a paper sack. He said the suspect told him to watch the people in the back room. He said while he was watch-

ing the people in the back room he was also watching the suspect behind the counter, with the pistol, getting the money out of the cash register. He said that that suspect then asked Mr. Siler, being behind the counter with him, where the rest of the money was. At which time he observed the suspect put what appeared to be a blue or a green bank sack or bank bag into a paper sack. He then said that he then got the—he then asked the lady that was in the back room where her purse was at. And, he said that the lady replied it was on the counter underneath, underneath the counter. He said, 'Well, forget about it.'

He said then, a suspect walked the—Mr. Siler back to the back room and upon Mr. Siler passing by him, he observed the suspect strike him on the head with the pistol. He said that he then observed the suspect make the other—the three victims lay on the floor. And, observed the suspect fire once over the woman's head, missing her, at which time he stated he then left, run out of the store and heard three shots as he was running out of the store."

Officer Knight further testified that on the 7th of August he interrogated defendant Breedlove, after advising him of his Miranda warnings. Breedlove told Officer Knight that he and three other persons robbed Turk's grocery store. During the course of the robbery the Siler family was forced to go into a rear room of the store. Breedlove heard four shots as he was leaving the store. The four then drove to a girl's house where the money was divided. Thereafter, Breedlove took Officer Knight to his brother's residence where a .22 caliber pistol was recovered. Officer Knight then identified State's exhibit No. 17 as the .22 caliber pistol that was recovered.

Detective George A. "Buddy" Burns next testified that he was taken to 1624 Northwest 35th Street, Oklahoma City, Oklahoma, by defendant Carolina, where State's exhibit No. 1, a bank bag, was recovered. Officer Burns then identified

State's exhibit No. 1 as the bank bag he recovered. Officer Burns further testified that defendant Draper took him to his grandmother's residence where a .38 caliber pistol was recovered. Burns then identified State's exhibit No. 18 as the .38 caliber pistol he recovered at Draper's grandmother's residence.

Oscar Breedlove, defendant Breedlove's brother, testified his brother, defendant Breedlove, gave him a .22 caliber pistol on August 4, or August 5, 1972.

Calvin Murphy testified he was with defendant Breedlove and defendant Draper on the afternoon of August 4, 1972. At this time defendant Breedlove fired State's exhibit No. 18, and defendant Draper fired State's exhibit No. 19. Defendant Draper said he was going to pull a robbery.

The following day Murphy. saw defendant Draper and Draper told him " . . . he pulled a robbery. He got clean away and was going to pull another one."

Ray Lambert, Firearm's Examiner for the State Bureau of Investigation, testified he examined the State's exhibit No. 17, a .22 caliber pistol, State's exhibit Nos. 14, 15, and 16, three bullets removed from the Siler family's bodies, and three .22 caliber cartridge cases. In his opinion the cartridge cases were fired from State's exhibit No. 17.

Dr. Charles Marshall testified that he was a licensed medical doctor in the state of Oklahoma and a consultant pathologist with the Medical Examiner's Office for the State of Oklahoma and that he performed a postmortem examination on the body of William Howard Siler on August 5, 1972, and removed a bullet from the head of the body. In Dr. Marshall's opinion the cause of death was the result of a gunshot wound to the head with death being close to instantaneous.

Edward Charles Ellis Hishaw testified that in the early morning hours of August 5, defendant Carolina came to his house, showed him some money and said he had robbed a store and some people had been shot. Hishaw further testified that defendant Draper arrived at his house shortly after defendant Carolina and was in possession of some money and a pistol. Draper subsequently told Hishaw that he took part in the robbery.

Berneice Marie Baley testified that shortly before she heard about the robbery defendant Draper, Carolina and two other men came by her house stating that they wanted to talk. Thereafter, they left Eighteen Dollars and ten cents ($18.10) on her coffee table and left her house. She did not see any guns.

Wayne Glover testified he was a co-defendant and knew defendants Breedlove, Carolina and Draper. On August 4, 1972, at approximately 9:30 p. m., he met the other three defendants at an apartment in Oklahoma City. Glover subsequently asked Breedlove to take him over to his grandmother's home. When he got into the car he passed out, as he had been drinking most of the day. He woke up as the car stopped on a dark street. The other three defendants left the car and soon returned, "walking fast." Breedlove got in the driver's seat and Draper told Breedlove to drive to a girl's house. Glover saw a .22 pistol, Exhibit 17, on the front seat. Upon arriving at the girl's house, all four went inside to the dining room table where Glover saw Draper place a .38 pistol, Exhibit 18, and a money bag, Exhibit 1, on the table. Breedlove pulled a pistol from his belt and placed it on the table. Glover also saw a "rifle type" weapon on the table near defendant Carolina. Defendant Draper then took money from the bag and divided it four ways and each defendant took a share. Draper remarked that " . . . him and Breedlove didn't leave no witnesses." And, "If anybody tell on me, they're going to get hurt." Draper also told them to put five dollars each in the kitty for the young lady. Breedlove said they " . . . ripped off something on Western." The next day Glover saw defendant Draper and remarked to him that a seven year old boy had been shot, to which Draper replied "That the boy looked

older than that to me." On cross-examination Glover admitted drinking very heavily on the 4th. The State then rested.

Defendant Draper testified that he knew of the Siler murders and the robbery but denied having any part in the crimes. He also stated that any confessions or statements made by him were a result of police brutality and coercion. Draper further testified to an alibi. Emma Tracy Draper Brent, Sterling Brent, Sheila Draper and Robert Draper all testified to the whereabouts of defendant Draper on the evening of the robbery and murders corroborating Draper's alibi.

Defendant Breedlove testified in his own behalf stating that on August 4, 1972, he and his wife went out visiting relatives. One of the places they stopped was Calvin Murphys so his wife could see Murphy's new child. While there he and Murphy saw Glover and had a drink. After leaving Glover, Murphy asked Breedlove if he had a gun and he said that he did. Murphy then asked to see it and, as they approached the car to get the gun, Draper appeared. Draper also asked to see Breedlove's gun and he showed it to them. He handed it to Murphy who took it around to the backyard and fired it into the air. Draper also fired his gun into the air.

Later as he was leaving a friend's home he heard a person call to him. When he looked up Glover, Draper and someone else were coming towards the car. They ran up and jumped into Breedlove's car and Draper said let's go. Breedlove asked where and Draper said that they were going to the east side to pick up some guys who had a hot wire car so they could go riding and check out the place to be robbed. The man could not be found, however. They then picked up Carolina's weapon which was similar to Exhibit 19. At Draper's direction they finally ended up on a dark street near Turk's Grocery. He stated that Carolina, he, and Draper went into the store that night. Breedlove stated that he was scared but did not want to admit it to others. Carolina went up to the counter and stuck the barrel of the gun into the man's chest and told him that he would shoot him. He stated that Draper was the one giving the instructions and told him to take the woman and the boy into the back of the store. Draper went behind the counter and handed the man a brown sack to put the money in. Draper then took the man's billfold and took the money out of it. Draper then told the man to turn around and come to the back room where his wife and child were. Breedlove hit the man on the back of the head and Draper then pushed him to the floor. At that time Breedlove figured that they were going to leave the store and try to get to the car before the man could get up to call the police. He and Carolina turned to leave the store and walked to the front door when Draper came up, grabbed Breedlove's gun and went to the back room. Draper then shot the victims in the back of the head. The three then ran to the car, drove to a girl's house and split the money up. He then took Draper, Carolina and Glover out to Southeast 15th and let them out.

He further testified that he gave Oscar Breedlove his gun because he felt that if he was ever caught with it in his possession he would be picked up and convicted. He was picked up early Tuesday morning about 1:30 a. m. by officers. He testified that to his knowledge what he told Officer Knight was the same thing that he was telling the jury. He stated that he did not know Glover before August 4, 1972. He denied having murdered or having intended to murder anyone or having fired any shots. He stated the reason that he went to the store, even though he had a gun, was that Draper had a .38 which was "stronger" than his. He thought he had no alternative plus he was trying to be brave. He stated that he was afraid of Draper. Draper told him that he used the .22 because it was quieter than his .38. He stated that he hit Siler on the head simply to knock him out so they would have a chance to get away.

Defendant's first proposition in error urges that the trial court committed reversible error in refusing to grant defendant's motion for a severance upon the ground that the confession of co-defendant Ray Charles Carolina implicating the defendant was admitted into evidence. The record reflects that the defendant preserved this issue for appeal by properly filing and arguing his pretrial motion for severance and reiterating same during trial.

■ However, the issue as raised in the instant case is, in our opinion, without merit. The Carolina confessions related by both Officer Snipes and Officer Woodie did not implicate the defendant Breedlove by name. Carolina only advised Woodie that he was at the scene of the crime and that he knew who did the shooting. Carolina then told Snipes that he and three other men had gone to the store to rob it and that during the robbery three people had been shot. He further stated that he knew who shot the victims and that he and the two others who had entered the store were armed, one with a .22 caliber pistol. We do not deem the above to be so prejudicial to the rights of the defendant as to warrant a reversal. As the defendant subsequently took the stand and admitted participating in the robbery and being armed, it is our opinion that the technical violation of the rule set out in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L. Ed.2d 476, constitutes harmless error beyond a reasonable doubt. See Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.

In Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340, the United States Supreme Court held as follows:

"The mere finding of a violation of the Bruton rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the code-fendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error."

For all the reasons set out above it is therefore our opinion that the trial court did not abuse its discretion in overruling defendant Breedlove's motion for severance. In light of the record in the instant case and the overwhelming evidence of guilt remaining if the Carolina confessions are disregarded we do not find there to have been a prejudicial joinder.

■ The defendant's next proposition in error urges that the trial court committed reversible error in allowing co-defendant Glover to testify in a capital case when his name had not been properly endorsed on the information as a witness. Again, we do not agree. The amended information reflects that Wayne Glover was named as a co-defendant. In Cloud v. State, 41 Okl.Cr. 395, 273 P. 1012, this Court held that the name of a co-defendant whose name appears on the face of the information does not have to be endorsed on the list of witnesses. The appearance of the name on the face of the information answers every requirement of the law and any defendant is put on notice that a named co-defendant may testify against him at trial.

■ The defendant's last proposition in error urges that the trial court committed reversible error in denying defendant's motion for a change of venue. The record is clear that the defendant properly preserved the matter for appeal. However, it is abundantly clear from the 200 pages of voir dire examination appearing in the transcript that the trial court gave all defendants very wide latitude in examining the prospective jurors and that all jurors composing the final panel stated that they could decide the case based upon the evidence presented at trial and not from what they may have heard or read.

■ We do not find abuse of discretion in the instant case. This Court cannot require that a juror not read any articles or

see any reports of the case in the news media. It is sufficient if a juror can lay aside his opinion, if any, and render a verdict based on the evidence presented in court. See Sam v. State, Okl.Cr., 510 P.2d 978. In the instant case there is no evidence that the jury did not reach a verdict based solely on the evidence presented in court. Therefore, defendant's last proposition is without merit.

From a consideration of the lengthy record as a whole, we do not find that the defendant has been deprived of any substantial right, but that the issues were fairly presented to the jury, and defendant received a fair and impartial trial. The verdict and judgment appealed from is, accordingly, affirmed.

BRETT and BUSSEY, JJ., concur.