Shane BOWERS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–280.

Court of Criminal Appeals of Oklahoma.

Nov. 12, 1975.

John DeWitt, Shipp & DeWitt, Idabel, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

Appellant, Shane Bowers, hereinafter referred to as defendant, was charged conjointly with Richard Jenkins, hereinafter referred to as co-defendant Jenkins, in the District Court, McCurtain County, Case No. CRF–74–111, for the offense of Attempted Burglary, Second Degree, in violation of 21 O.S.1971, § 1435. Whereafter the defendant and co-defendant Jenkins had a joint trial by jury and pursuant thereto the defendant and co-defendant Jenkins were sentenced to serve a term of one (1) year's imprisonment. From said judgment and sentence the defendant has perfected his timely appeal to this Court.

The State's first witness at trial was James E. Murphy who testified he was the Sheriff of McCurtain County and was so employed on the 15th of July, 1974, on which date he went to a small concrete structure used for the storage of dynamite located approximately two miles north of Idabel to investigate an alleged crime. At that time he observed a jack positioned on top of several rocks with the top of the jack against the slab roof of the structure, and he observed that the jack had been actuated to raise the slab, which formed the roof of the small building housing the dynamite, some five or six inches. He further stated that he arrested co-defendant Jenkins at that time.

Arnold McNeal testified he was a partner of the Triple M Construction Company in Idabel and that in such business he utilized explosives which were housed in a small concrete building approximately two miles north of Idabel. He stated that on the 15th of July, 1974, at approximately 7:30 a. m., he went with one Ronnie Austin, an employee of the company, to the concrete building where he and Austin noticed a Volkswagen automobile parked off the shoulder of the road. He said that as they approached the concrete building an individual came from behind the building and spontaneously uttered "I'm not doing anything." (Tr. 20) Thereafter, the individual moved toward the Volkswagen while at the same time Ronnie Austin called to him and said, "Hey, they're trying to get into this thing. There is a jack over here." (Tr. 20) He further testified that upon investigation he observed a jack supported by rocks, which had raised the concrete slab roof of the building housing the dynamite approximately four to five inches. He then identified in court the defendant as the individual he had observed on that morning who had moved near the Volkswagen. Further, he stated that the defendant got into the Volkswagen and left but he observed the tag number and later reported it to police. He returned to the concrete building whereupon another individual was discovered crouching behind the building. He identified in court co-defendant Jenkins as the second individual he had observed at the concrete building on that date. Co-defendant Jenkins asked him "Why don't you let me go. We weren't trying to steal anything. We just wanted to see what was in the building." (Tr. 23–24) Witness McNeal stated that the concrete building had a sign painted on the door which read, "Danger—Explosives."

Ronnie Austin testified he was employed by the Triple M Construction Company and was so employed on the 15th day of July, 1974, at which time he accompanied Arnold McNeal to the concrete building which housed the dynamite. He stated that upon arriving at the concrete building he observed a Volkswagen parked in front of the building and shortly thereafter he observed the defendant come from behind the building. He said that Mr. McNeal asked the defendant what he was doing to which the defendant replied that he was doing nothing. Thereafter the defendant approached the Volkswagen. The witness then went around to the left side of the building where he observed a jack in position under the slab roof of the small concrete building. He then informed McNeal of the jack and McNeal got the tag number off the Volkswagen in which the defendant was leaving. Shortly thereafter, he saw

co-defendant Jenkins crouching behind the building and he and McNeal told co-defendant Jenkins to get into their truck.

Thereafter the State rested.

The defendant then took the stand and testified in his own behalf. He testified that on the 14th or 15th day of July, 1974, he worked for Weyerhaeuser Company in Wright City and in the early morning hours of July 15, he had a conversation with co-defendant Jenkins. He stated that co-defendant Jenkins asked him what he had planned after he got off work that morning at approximately 7:00 a. m. and, further, co-defendant Jenkins asked him whether or not he wanted to make some money. Inquiring of co-defendant Jenkins as to how to make the money, co-defendant Jenkins told him that he had learned that some marihuana was hidden somewhere on the old Broken Bow highway. The following morning after getting off work he and co-defendant Jenkins left in Jenkins' Volkswagen and upon arrival in the area of the concrete building they proceeded to search for the marihuana. While searching in a partially wooded area he heard sounds of a vehicle approaching and not knowing whether it was his co-defendant leaving or another vehicle approaching he proceeded to investigate. He saw co-defendant Jenkins behind the building and he observed Mr. Austin and Mr. McNeal in a truck which was right in front of the building. Not knowing at the time who Mr. Austin and Mr. McNeal were and assuming them to be associated with the marihuana, he walked directly to co-defendant Jenkins' automobile and left. He assumed that co-defendant Jenkins would get another ride home. He denied ever placing any jack under the roof of the building and, further, that the first time he saw the jack was while he was in jail.

Richard Jenkins, co-defendant, testified that he and the defendant did drive to the specified area to search for marihuana as previously related by the defendant to the court. He further stated that he did crouch down behind the building upon hearing an approaching vehicle and upon being discovered by the two individuals he was told to sit in the truck which he did. He denied ever having seen the jack, State's Exhibit No. 1, prior to seeing it in Sheriff Murphy's office, and that he did not see the jack the day he and the defendant searched for the marihuana. He denied ever having any conversation or making any comments to McNeal. He related that the source of the information that marihuana was located in that area was one J. C. Tidwell.

Justin Whisenhunt testified that he was present on the morning that the defendant and co-defendant Jenkins had the conversation which co-defendant Jenkins initiated when he asked the defendant if he wanted to go look for some marihuana, the location of which co-defendant Jenkins had knowledge, and heard the defendant reply, "Sure."

James Helms, in rebuttal for the State, testified that the jack which had been marked State's Exhibit No. 1 was his jack and that he had loaned the jack to the defendant as a result of defendant's mother calling him and asking to borrow the jack to level her trailer. When the defendant picked up the jack he was driving a Volkswagen.

J. C. Tidwell testified, in rebuttal for the State, that he at no time had any discussion with co-defendant Jenkins about any marihuana.

The defendant's first assignment of error asserts that the trial court erred in refusing to grant the defendant a severance. The defendant argues that the trial judge, prior to trial, had knowledge that the State would in part base their case against the defendant upon the implicating statement made by co-defendant Jenkins.[1] The

---

1. At trial the implicating statement was alluded to when Mr. McNeal testified that upon discovering co-defendant Jenkins crouched behind the building co-defendant Jenkins said, "Why don't you let me go. We weren't trying to steal anything. We just wanted to see what was in the building."

defendant's second assignment of error asserts that the trial court erred in admitting said implicating statement of co-defendant Jenkins and, thus, the defendant's first two assignments of error, having commonality in subject will be discussed together.

The defendant's complaint over the admission of the co-defendant's implicating statement is analogous to alleging a violation of the Bruton rule which held that the admission in a joint trial of evidence of a co-defendant's extrajudicial confession implicating the defendant violates the defendant's constitutional right of confrontation. See, *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Subsequent to *Bruton,* supra, the United States Supreme Court held, on no less than three occasions:

"The mere finding of a violation of the Bruton rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error."

*Schneble v. Florida,* 405 U.S. 427, 430, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972). See also, *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) and *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

Therefore, we are constrained to observe that under the facts and circumstances here presented the trial of this case, as conducted, did not constitute a fatally prejudicial violation of the Bruton rule. We note that the theory of the defense for the defendant was compatible with the theory of defense for the co-defendant and, as such, were not antagonistic to one another. The defendant and the co-defendant subsequently took the witness stand and both were subjected to cross-examination, and the trial court gave a cautionary instruction that the co-defendant's statement inculpating the defendant could be considered as competent evidence only as to the co-defendant and not as to the defendant. See, *Davis v. State,* Okl.Cr., 542 P.2d 532 (1975); *Williams and Justus v. State,* Okl.Cr., 542 P.2d 554 (1975); *Gregor v. State,* Okl.Cr., 505 P.2d 519 (1973); *Brown v. United States,* supra; *Schneble v. Florida,* supra; *Harrington v. California,* supra. We therefore find the admission of the statement of which the defendant now complains was, at most, harmless error. Title 20 O.S.1971, § 3001.

In consideration of the severance issue, the general rule is that the granting of a severance is discretionary with the trial court, and the Court of Criminal Appeals will not disturb the trial court's ruling, absent a showing that prejudice resulted therein. See, *Curcie v. State,* Okl.Cr., 496 P.2d 387 (1972) and *Hinds v. State,* Okl.Cr., 514 P.2d 947 (1973). After a careful examination of the entire record we are of the opinion the trial court did not abuse its discretion in denying severance in the instant case and, further, we find the defendant has failed to show that any prejudice resulted from the trial court's refusal to grant a severance. For the reasons stated, we find the defendant's first and second assignments of error to be without merit.

The defendant's third assignment of error asserts the verdict is not supported by the evidence. The defendant urges that the only admissible evidence was that the defendant was present in the area of the building and that there was a suspicion of guilt from his association with the co-defendant and, further, that such facts are not sufficient to support a conviction for the crime of attempted burglary in the second degree. We note that in the case of *Ervin v. State,* Okl.Cr., 351 P.2d 401 (1960), this Court in the third Syllabus stated:

"It is necessary to allege and prove three essential elements as requisite to an at-

tempt to commit a crime and they are: intent, performance of some act towards its commission, and *failure of consummation*. An adequate allegation as to failure of consummation is absolutely necessary as an element of the attempted commission of a crime." (Emphasis original)

Also see, *Parks v. State*, Okl.Cr., 529 P.2d 513 (1974). Also circumstantial evidence of proof of these elements is sufficient evidence on which a jury may make a finding of guilt for this offense. See, *Hawkins v. State*, Okl.Cr., 510 P.2d 693 (1973); *Parks v. State*, supra. We note the evidence reflects the defendant was found at the scene where a crime had been committed and where he had no legal right to be. The evidence further reflects that the same jack which was discovered at the scene of the crime where it had raised the roof of the building was the same jack the defendant had borrowed. We find the circumstantial evidence adduced at the trial is sufficient evidence upon which the jury concluded the defendant committed the offense of attempted burglary in the second degree. We therefore find the defendant's third assignment to be without merit.

■ The defendant's fourth assignment of error asserts the trial court erred in overruling the defendant's motion of objection to the introduction in evidence for the reason that the information did not plead the particular things or acts charged to be done with reasonable certainty so that defendant could be advised of the particular nature of the charge to be able to defend against it. Defendant urges that specific language in the information regarding the attempted entry by "attempting to prize open the roof of said building," is wholly insufficient to bring the issue tried in the instant case before the jury. It is pointed out by the State that the prosecutor in the instant case could have stated with more particularity the facts and circumstances of the alleged entry into the building, but we agree with the State in that the language in the information adequately states that the defendant and co-defendant attempted to gain entry into the building by prying open the roof and such language is sufficient to inform the defendants of the particular nature of the acts which were alleged to have been committed and, therefore, affording them the opportunity to defend themselves. We, therefore, hold that such language is sufficient to charge a violation of the laws of Oklahoma. For this reason we find the defendant's fourth assignment of error to be without merit.

■ Defendant's final assignment of error asserts the trial court erred in not following the recommendation of the jury that the one year sentence be suspended for and during good behavior. We need only note that such a recommendation is not binding on the trial court and refusal to follow same is not error. See, *Bohot v. State*, 89 Okl.Cr. 238, 206 P.2d 585 (1949). For this reason we find the defendant's final assignment of error to be without merit.

In conclusion we observe the record is free of any error which would justify modification or reversal and the judgment and sentence appealed from is, accordingly, *affirmed*.

BUSSEY, J., concurs.

BRETT, P. J., specially concurs.

BRETT, Presiding Judge (specially concurring):

I concur that this conviction should be affirmed, but I am also convinced that any time a jury returns a verdict finding the defendant guilty which recites, ". . . and assess his punishment at 1 years in the penitentiary to be suspended for and during good behavior," that the trial court should be required to either suspend the sentence or state reasons why the jury's assessment is not to be followed.