Earl Paul ROBINSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–676.

Court of Criminal Appeals of Oklahoma.

Nov. 29, 1976.

Rehearing Denied Jan. 11, 1977.

Frank Miskovsky, III, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Toby Mash, Legal Intern, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Earl Paul Robinson, hereinafter referred to as the defendant, was charged in the District Court, Oklahoma County, with the crime of Attempted Burglary in the Second Degree, 21 O.S.1971, § 42 and such crime constituting a subsequent offense after a conviction of offense punishable by imprisonment in the penitentiary, 21 O.S.1971, § 51, ¶ 3, Case No. CRF–75–3681. The case was tried before a jury and a verdict of guilty returned. Punishment was assessed at three (3) years' imprisonment. From said judgment and sentence a timely appeal has been perfected.

The State's first witness, Mary Brewer, stated that she owned Pee Wee's Cafe and Tavern at 414 South Miller Place in Oklahoma City, Oklahoma. The witness testified that she closed the cafe at about 3:00 a.m., September 25, 1975. She was called back by a silent alarm system, the Protection Alarm System, which had already summoned the police. She testified that the defendant had been in her place of business until she closed it that morning. She said that upon returning to the cafe she noticed that the window fan in the back window was pulled out and the alarm system wires were disturbed. Mrs. Brewer also testified that there was grease all around the window where the window fan had been positioned. She testified that nothing was missing from inside the cafe.

The State's next witness, Betty Graham, testified that she was called to let the police in. She also stated that she noticed the fan out of the window and testified as to the cooking grease around the window which had held the fan.

The State's third witness was Officer Tony Allison of the Oklahoma City Police Department. He testified that he was dispatched to the scene as a result of a silent alarm at about 3:30 a.m. At the cafe, the officer first checked the front of the building and as he started around to the back of the building he noticed the defendant running from behind the cafe. Officer Allison returned to his scout car for his shotgun and gave chase after notifying Officer Majors, who was arriving on the scene, of the direction in which the defendant was fleeing. Officer Allison then gave chase and found the defendant lying in a shed behind the cafe. The officer noticed grease on the defendant's clothing which he later observed to be similar to that found on the sill of the window where the fan had been. The officer observed that nothing had been disturbed inside the cafe.

Officer Majors then testified that he answered the same silent alarm mentioned above. He then testified that he came to the assistance of Officer Allison and saw the defendant emerge from the shed at the command of Officer Allison. He stated that he gave the Miranda warning to the defendant. He also noticed grease on the defendant and that it did not look like anyone had entered the cafe.

On recall, Officer Allison testified that after the defendant had the Miranda warning that the defendant told him that he noticed four white males at the rear of the cafe and tried to chase them off. The State then rested.

The defendant then took the stand and testified that he lived next door to the Pee Wee cafe and tavern. He stated that on two prior and separate occasions he had pled guilty to the charge of Unauthorized Use of a Motor Vehicle and the charge of Using a Stolen Credit Card. The defendant testified that his reason for fleeing was that he panicked when he saw the police because of his prior convictions. The defendant said that if he told the story about trying to stop the whites from breaking in, he did so because he was nervous, frightened, and had been drinking. The defendant claimed that the clothes he wore that night did not have cooking grease on them, and that the reason he was behind the cafe was that it was a frequent meeting place for many of the patrons of the cafe after the cafe closed.

Joe Gordon was then called as a character witness for the defendant, and he testified as to the good reputation of the defendant as model worker.

The next witness for the defense was Tina Robinson, the sister of the defendant. She testified as to the chain of custody of clothing which the defense entered into evidence as that which the defendant wore on the night in question. The defense then rested.

It should be noted that the clothing exhibited in the courtroom had no cooking grease on it, but that the arresting officer refused to identify the slacks as even being similar to the clothes they claimed the defendant wore on the night in question.

The first assignment of error is that there were errors of law which occurred at

the trial and which were excepted to by the defendant. The second assignment of error is that the verdict is contrary to and in disregard of the court's instructions. The third assignment of error is that the court's instructions are misleading and ambiguous and that the jury could have rendered a different verdict or found the defendant guilty of another charge other than that which he was charged. The fourth assignment of error is that the elements of attempted burglary were not proven as set out in *Parks v. State,* Okl. Cr., 529 P.2d 513 (1974) and *Hawkins v. State,* Okl.Cr., 510 P.2d 693 (1973). These assignments of error will be dealt with in the sequence listed except that assignments two and three will be considered together.

■ The first assignment of error, that errors of law occurred at the trial, is without merit. An attack of the proceedings of the trial court would have to be under 21 O.S.1971, § 41 or 22 O.S.1971, § 841. The defendant was charged with Attempted Burglary in the Second Degree.

". . . The three elements required to constitute an attempted crime are as follows: (1) intent, (2) some overt act toward the commission of the crime, and (3) failure to consummate." *Kidd v. State,* Okl.Cr., 462 P.2d 281, 283 (1973).

In the instant case, the jury could easily have found the removal of the fan was the overt act, that the act evidenced the intent of the defendant that the defendant and no other person performed the act and that the arrival of the police prevented consummation of the crime of burglary. The State in no way tried to prove actual entry into the cafe. There was no conclusive evidence that the defendant did enter into the cafe. Therefore an attack under 21 O.S. 1971], § 41 thus failed.

■ Likewise, an attack under 22 O.S. 1971, § 841, which provides for discharge of the jury when the facts proved constitute an offense higher than that charged, must fail. The jury should not be dismissed unless:

". . . *the circumstances must be forceful and compelling,* and must be in the nature of a cause or emergency over which neither court nor attorney has control, or which could not have been averted by diligence and care." (Emphasis original) *Sussman v. District Court of Oklahoma County,* Okl.Cr., 455 P.2d 724, 730 (1969).

There is no showing of the requisite forceful or compelling circumstances in this case.

■ The second assignment of error that the verdict is contrary to and in disregard of the court's instructions, will be considered with the third assignment of error, that the court's instructions are misleading and ambiguous and that the jury could have rendered a different verdict or found the defendant guilty of a charge other than that which he was charged.

The trial judge plainly set out the statutory requirements for the proof of the crime of which the defendant was convicted. We find no merit in defendant's contentions. There is nothing in the record to show that the defendant's counsel objected to the court's instructions or offered instructions of his own. The Court stated in *Kidd v. State,* supra, that:

"[T]his Court has consistently held it is the duty of counsel, as an officer of the Court, to aid the Court to avoid error by objecting to improper instructions and submitting one to be given. In this case, counsel did neither, and cannot now be heard to complain." (at page 283)

Since we find nothing in the record to support the defendant's claim it must fail.

■ The fourth assignment of error that the elements of attempted burglary were not proven as set out in *Parks v. State,* supra, and *Hawkins v. State,* supra is frivolous. *Parks v. State,* supra, is a case remarkably similar to the instant case. It involved an Attempted Burglary in the Second Degree, After Former Conviction of a Felony charge. The defendant was arrested at the scene by officer summoned

by a silent alarm. The primary evidence in the case consisted of: (a) the defendant's presence at the scene, (b) a glass panel had been removed to allow entry into a business property, (c) a fingerprint of the defendant was found on the glass, and (d) the defendant stated that he had observed others attempting the breakin and had a plausible reason for being in the area. The Court set out the same elements of attempted burglary discussed earlier. The Court found:

> "[C]ircumstantial and direct evidence adduced at the trial is sufficient evidence upon 'which the jury could conclude defendant committed the offense of attempted burglary in the second degree." *Parks v. State,* supra, at page 515.

In the instant case it appears from the record that there was sufficient evidence to go to the jury for determination of the facts and their finding will not be disturbed.

The judgment and sentence of the trial court is, therefore, AFFIRMED.

BUSSEY and BLISS, JJ., concur.