**Michael Bascum SELSOR, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–578.**

Court of Criminal Appeals of Oklahoma.

April 6, 1977.

Richard A. Hoffman, Asst. Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

Appellant, Michael Bascum Selsor, hereinafter referred to as defendant, was charged in the District Court, Tulsa County, with the offenses of Armed Robbery, CRF–75–2183; Shooting With Intent to Kill, CRF–75–2182; and, Murder in the First Degree, CRF–75–2181, After Former Conviction of a Felony. A guilty verdict was returned as to all three charges, punishment being assessed at death for Murder in the First Degree; twenty (20) years' imprisonment for Shooting With Intent to Kill; and, twenty-five (25) years' imprisonment for Armed Robbery. The right to appeal the Armed Robbery conviction was waived by the defendant. From the remaining judgments and sentences, a timely appeal has been perfected to this Court.

Defendant was tried conjointly with co-defendant Richard Eugene Dodson. For a recitation of the facts see *Dodson v. State,* Okl.Cr., 562 P.2d 916 (1977).

In his first assignment of error, defendant asserts the unconstitutionality of Oklahoma's death penalty statute, 21 O.S. Supp.1973, § 701.3. With this we agree. See *Riggs v. Branch (State),* Okl.Cr., 554 P.2d 823 (1976).

Defendant's second and third assignments of error concern the failure of the

trial court to either sever the two co-defendants' cases, or to grant outside counsel to one of the two co-defendants. This was necessary, the defense asserts, because of the conflicting nature of the defenses of each co-defendant.

The claim was made prior to trial that the defendant would plead simply not guilty, but that co-defendant Dodson would plead not guilty by reason of insanity; and, that these were inconsistent defenses in that defendant would seek to deny, and force the State to prove, any complicity on his part, whereas co-defendant Dodson, in order to establish his insanity defense, would have to admit his own involvement. Defense counsel asserts that they were put in an ethically untenable position by being forced to try both defendants conjointly, in that they had to decide which defendant they wished to defend with the most zeal. If co-defendant Dodson were put on the stand to establish his defense, then defendant would necessarily be implicated; if counsel did not wish to so implicate the defendant, then Dodson would be denied his defense. The severance or appointment of outside counsel, it is claimed, would have cured the problem.

■■ Assuming for the sake of argument that this theory is correct, nevertheless it must be noted, however, that co-defendant Dodson wholly failed to produce any competent evidence by which he could establish his defense of insanity. The medical expert, Dr. Garcia, stated that he had no opinion regarding co-defendant Dodson's sanity at the time of the commission of the crime. Co-defendant Dodson did not take the stand in an attempt to establish the defense, and therefore any fears which counsel may have had of co-defendant Dodson implicating the defendant turned out to be groundless. Further, the defendant cannot complain that co-defendant Dodson was unable to establish or prevented from establishing his defense of insanity by the claimed "turn around" in the testimony of Dr. Garcia. Any error in this regard would tend to vitiate co-defendant Dodson's conviction, not the defendant's. We are of the

opinion that no prejudice was shown because of the failure of the trial court to grant severance or outside counsel.

In dealing with severance this Court said in *Bowers v. State*, Okl.Cr., 542 P.2d 950, 953 (1975):

"In consideration of the severance issue, the general rule is that the granting of a severance is discretionary with the trial court, and the Court of Criminal Appeals will not disturb the trial court's ruling, absent a showing that prejudice resulted therein. . . ." (Citations omitted)

Therefore, defendant's second and third assignments of error are without merit.

■■ In his fourth assignment of error defendant complains of the admission into evidence of certain photographs depicting the body of Clayton Chandler, killed during the commission of the robbery. This assignment of error is without merit. The pictures are not gruesome or bloody, and they were admitted with the stated purpose of showing the position of the body. In any case, pictures of this sort are always useful in establishing the corpus delicti of a crime. The introduction of such photographs is a matter largely within the discretion of the trial court, and if such photographs have probative value which outweigh the danger of prejudice to the defendant, the evidence is admissible. *Jones v. State*, Okl.Cr., 542 P.2d 1316 (1975).

■ The defendant contends in his fifth assignment of error that the trial court erred by allowing the State to introduce into evidence State's Exhibit No. 14, certain lead particles found in the back area of the store where the robbery occurred. The defendant argues that Officer Tom Lewallen was not qualified as an expert, nor did he testify as to what factors led him to believe that the lead particles were actually expended bullets. We must disagree with both contentions. The record reflects that after testifying as to his qualifications concerning educational background and working experience, the following question was propounded by the prosecuting attorney:

"Q. And, will you tell this Court and jury, have you had an occasion to be

qualified as an expert in firearms identification in the past in other courts?

"A. Yes, sir. I've offered expert testimony in Tulsa County Courts, Osage County Courts and Oklahoma County Courts.

"MR. SHAFFER: We would offer Officer Lewallen, Your Honor, as an expert in the field of firearms identification based on his experience as related in this court.

"BY THE COURT: You may proceed." (Tr. 372)

The witness thereafter testified as to the test he performed on the lead projectiles and his conclusions therefrom, without objection by the defendant. We therefore find this assignment of error to be without merit. See, *Box v. State,* Okl.Cr., 541 P.2d 262 (1975).

■ In his sixth assignment of error defendant asserts that his confession, given to Santa Barbara Police Officer Evans, should not have been admitted into evidence because he was not properly informed of his constitutional rights. Defendant does not claim that there was a total failure to give such rights, but rather that considerable interrogation was had before the *Miranda* rights were given to him.

The entire conversation between Officer Evans and defendant was recorded on tape, and a transcript was prepared therefrom. We have examined this transcript and find that although defendant was not immediately given a *Miranda* warning, said warning was given before any actual interrogation was begun. The questions asked prior to the warnings being given were of a general sort, and did not pertain to the commission of any crime. Additionally, nothing that was said by the defendant prior to the giving of the *Miranda* warnings was in any way inculpatory, nor was it introduced into evidence.

■ Similarly, we find that there was no evidence that the confession was involuntarily given, although the officer who obtained it was a. skillful interrogator. Thus, since the defendant voluntarily

waived his constitutional rights, we find that his confession was properly admitted, and defendant's sixth assignment of error is without merit.

■ Defendant contends in his seventh assignment of error that the trial court erred in permitting co-defendant Dodson's confessions to be introduced into evidence. This is so defendant argues because the confessions made by Dodson seriously inculpated defendant as well, and they were thus violative of the rule in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), in that defendant was denied an opportunity to confront and cross-examine co-defendant Dodson.

However, a reference to the case of *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), shows that defendant's contentions are without merit. *Schneble* held, in essence, that the *Bruton* rule is subject to the harmless constitutional error doctrine of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). See also, *Breedlove v. State,* Okl. Cr., 525 P.2d 1254 (1974).

In the present case, confessions of both defendants were introduced into evidence after appropriate determinations of voluntariness and adherence to constitutional requirements. Defendant's confession was a complete admission of complicity in the crime. The events defendant related to Officer Evans, and which were repeated by Evans from the witness stand, were entirely consistent and comported with the objected evidence related by the eyewitness and the various investigators who worked on the crime. As such, any admissions by co-defendant Dodson which were repeated from the witness stand and which implicated·defendant were harmless beyond a reasonable doubt. We are convinced that if a new trial were to be granted, with the exclusion of co-defendant Dodson's confession, the verdict would be the same. As the United States Supreme Court said in the Syllabus to *Schneble v. Florida,* supra, as follows:

"Any violation of *Bruton* that might have occurred was harmless beyond a reasona-

ble doubt in view of the overwhelming evidence of petitioner's guilt as manifested by his confession, which completely comported with the objective evidence, and the comparatively insignificant effect of the codefendant's admission. . . ."

■ Defendant's eighth assignment of error contains two propositions, both of which concern the searches of defendant's car in California. In the first proposition it is contended that the search of the vehicle on the beach immediately subsequent to the defendant's arrest, and the seizure of the nine shot revolver therefrom, was illegal as an unreasonable search and seizure, and that therefore this evidence should have been suppressed. This argument is without merit. The automobile was on a crowded public beach with many children about. The officers had information from a hitch-hiker, whom defendants had given a ride, that there was a gun in the car. Additionally, the officers did not know if defendants had an accomplice lurking about. The trial court held that these circumstances were sufficiently exigent to justify a warrantless intrusion. We agree. In *Johnson v. State,* Okl.Cr., 554 P.2d 51, 54 (1976), we stated:

" 'It is argued that the searching officers had time and opportunity to procure a search warrant prior to the search, and for this reason the search in question was illegal. It has been decided that this naked fact alone does not render the search of an automobile illegal.' *Jenkins v. State,* 116 Tex.Cr.R. 374, 32 S.W.2d 848 (1930). See also, *United States v. Roberts,* D.C., 90 F.Supp. 718 (1950). Therefore, the relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. One of the exceptions to the general search warrant rule is the situation where exigent circumstances or a state of exigency exists. . . ." (Citations omitted)

Defendant's first proposition is without merit.

■ In his second proposition, defendant asserts that the second search of de-

fendant's car by Tulsa Officer D. A. Roberts while the car was impounded in the Santa Barbara Police Garage was illegal. The justification for this search was that it was made for the sole purpose of obtaining clothes for the defendants to wear on the return trip to Tulsa. Several live .22 caliber cartridges were recovered, and it was shown at trial that certain marks or scratches on these shells were identical to certain scratches or marks found on expended .22 caliber shells which were recovered from the scene of the crime. The trial court ruled that Officer Roberts' actions in searching the car for clothing for the defendants were reasonable, and that the officer thus had a right to be where he was when the recovered shells came into "plain view."

We find that this second search of defendant's vehicle was made without a warrant and without defendant's consent, and was thus illegal. While it is true that may have existed probable cause for the search of the vehicle, it is also true that at the time the second search occurred there existed no exigent circumstances justifying a warrantless intrusion. The car was impounded and secured in the police garage. If it be true that the officers only intended to secure clothing for the defendant and co-defendants, and we have no reason to doubt this, then, at the very least, consent of defendant and co-defendants should have been obtained.

■ However, we are constrained to find the erroneous admission of these shells harmless. There was no question that the corpus delicti of the crime was established. The admissions of the defendant as related by Officer Evans were no mere inculpatory statements from which guilt could be inferred, but rather were a full-blown confession complete in every detail. The United States Supreme Court said in *Schneble v. Florida,* supra, 405 U.S. at 432, 92 S.Ct. at 1060, ". . . Thus, unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required. . . ." (Citations omitted)

Thus viewed, we are of the opinion in the present case that the minds of an average jury would not have found the State's case significantly less persuasive had the shells found in defendant's car and the related testimony been excluded. See *Schneble v. Florida,* supra. There was thus no substantial prejudice to the rights of the defendant by the erroneous admission of these shells, and what was proven by them. This being so, defendant's second proposition in his seventh assignment of error is without merit. Title 20 O.S.1971, § 3001, harmless error statute.

■ In his final assignment of error defendant asserts several propositions dealing with alleged prosecutorial misconduct. Most of these propositions are not supported by citations of authority, and thus we are not bound to consider them. As we have said in *Sandefur v. State,* Okl.Cr., 461 P.2d 954 (1969), it is necessary for plaintiff in error not only to assert error, but to support his contentions by both argument and the citations of authority. Where this is not done and it is apparent that the defendant has been deprived of no fundamental rights, this Court will not search the books for authority to support the mere assertion that the trial court has erred.

In any case, we have examined all of defendant's claims hereinunder and find that the prosecutor conducted himself fairly and with no attempt to bias or prejudice the jury. Finding no error, defendant's final assignment of error is without merit.

For the foregoing reasons, the sentence in Case No. CRF–75–2181, Murder in the First Degree, is hereby *MODIFIED* to Life imprisonment, and otherwise *AFFIRMED* ; judgments and sentences in Case No. CRF–75–2182, Shooting With Intent to Kill and Case No. CRF–75–2183, Armed Robbery, are *AFFIRMED.*

BUSSEY, P. J., concurs.

BRETT, J., concurring in part and dissenting in part:

I concur in the results reached in this decision, but I dissent to the manner in which Officer Tom Lewallen was permitted to qualify himself as an expert. I believe the Officer should have been qualified in the same manner that any other expert witness is qualified.