## KARL WILSON BOHOT v. STATE.

No. A-10943.  May 18, 1949.

(206 P. 2d 585.)

See Bohot v. State, 89 Okla. Cr. 454, 210 P. 2d 379.)

T. Jack Tellegen and John J. Carney, both of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst Atty. Gen., and Warren H. Edwards, Co. Atty., Oklahoma County, of Oklahoma City, for defendant in error.

BAREFOOT, J. Defendant, Karl Wilson Bohot, was charged in the court of common pleas of Oklahoma county with the offense of driving a motor vehicle while under the influence of intoxicating liquor; was tried, convicted, and sentenced to pay a fine of $250 and to serve one year in the county jail, and has appealed.

For a reversal of this case, it is contended:

"1. Conduct of the prosecuting attorney, in persisting in cross-examining the accused by assumptions and insinuations as to previous unlawful acts and transactions, in spite of rulings against him is improper and prejudicial.

"2. In rebuttal, when the defendant has placed his character in issue, it is error for the state to introduce evidence of other criminal acts, unless such acts come within a common scheme or plan or other exceptions to the general rule which are set forth in this proposition."

"3. That the court erred in overruling the demurrer to the evidence and the motion for a directed verdict.

"4. That the judgment and sentence is excessive."

For a proper consideration of these assignments of error, it is necessary to give a short statement of the facts as revealed by the record.

The defendant was a duly elected constable from a district about one mile east of the Oklahoma City boundary. He was arrested on Sunday night, January 26, 1947, about 9:30, by two highway patrolmen, while he was driving a Ford automobile west on Reno avenue, in the eastern part of Oklahoma City. The patrolmen had followed defendant's car for some distance as it proceeded north on Eastern avenue, across the North Canadian river bridge and turned west on Reno. During part of this time defendant's car was on the wrong side of the street, and was weaving back and forth. He was driving at a rate of about 35 miles an hour, and while crossing the bridge, came near hitting an oncoming automobile. Two other automobiles pulled off the pavement to avoid a head-on collision with the car driven by defendant. After driving west about two blocks on Reno avenue, and running off the pavement, defendant was stopped by the patrolmen, arrested for drunk driving, and taken to the county jail where he was detained until about noon the following morning and charges filed against him, as above stated.

Both patrolmen testified that defendant was drunk at the time he was arrested, and that he staggered as he attempted to walk, and they could smell whisky on his breath.

One of the officers testified to the following conversation with the defendant:

"I asked him, 'Can't you drive that car any better than that?' He said, he didn't see anything wrong with it. I said 'What have you been drinking?' He said 'Whisky.' I said, 'How much?' He said 'I have had two or three drinks.' "

The officers found a pint bottle of Kentucky Tavern whisky about one-fourth full in defendant's pocket, and a pint bottle containing a very small amount of whisky between the front and back seats. This whisky was turned over to the evidence officer of the county attorney and was introduced in evidence.

Deputy Sheriff Mike McGrew, in response to a call, reached the scene just at the time of the arrest of defendant by the two highway patrolmen. He testified that he met the defendant and observed that his car "swerved from the regular line of traffic," that he turned around and followed defendant and saw him get out of his car after it was stopped by the patrolmen. He testified:

"Q. What was the man's condition as to being sober or otherwise, the defendant? A. He was under the influence of intoxicating liquor in my opinion. Q. Slightly, or otherwise? A. Well, beyond the point of slightly."

Pearl Holland testified for the state. She testified that she owned a cafe at 114 Hudson, Oklahoma City. She met the defendant, whom she knew slightly, on Sunday afternoon, January 26, 1947, at "Pat's Club," a beer tavern near her place of business. She asked defendant to

take her out on Eastern to see some friends of hers. It was her birthday, and she wanted to celebrate and told defendant she would buy a pint of whisky. They first went to Red Taylor's place, and from there to Ben Hopkins' tavern on southeast Twenty-Ninth Street. While there the defendant procured a pint of whisky. Witness offered to pay for it, but defendant would not permit her to do so. They then went to "The Derrick" which was operated by Norma Chief, a friend of the witness. While at these various places, they were drinking whisky and beer. Witness saw the defendant drink whisky at "The Derrick", and beer at "Pat's".

Tom Wren worked at Ben Hopkins' place on Southeast Twenty-Ninth Street. He testified that defendant came there on the night in question, and called for a pint of whisky. When the witness delivered it to defendant, defendant told him to charge it to Ben Hopkins. When told by witness he could not do that, defendant showed him his badge and his gun, and "He said I would, or, he said, he would take every damn one of us to jail." The witness then gave defendant the pint of Kentucky Tavern whisky.

This witness was corroborated by the witness Ben Hopkins, who followed defendant into the tavern. On cross-examination counsel for defendant attacked the character of the witness Ben Hopkins and proved that he was in the liquor business, and had been a bootlegger for many years. That he had been convicted on numerous occasions and had served a term in the penitentiary. Also, that the witness Tom Wren was engaged in selling whisky. There was much irrelevant, incompetent evidence produced by the cross-examination by counsel for the defendant. Defendant attempted to show that there was

a frame-up against him by reason of his participation in raiding places of business in Oklahoma City, outside of his constable district.

Defendant denied much of the testimony offered by the state. He denied taking the whisky at the Ben Hopkins Tavern, or threatening to put any one in jail. He also denied that he was under the influence of liquor at the time of his arrest, but did admit that he had taken "one drink, in order to be sociable." He testified that the whisky bottle with a small amount of whisky found in the rear of his car had been secured by him in a raid. He also produced eleven witnesses, a number of whom were from his district, who testified that his reputation as a peaceable and law-abiding citizen was good, and that they had never seen him under the influence of intoxicating liquor. The proof also showed that defendant was a veteran of World War II, and had been wounded, and that a number of the witnesses for the state were also veterans.

From the foregoing statement, it will at once be observed that there was a conflict in the evidence, but that the evidence of the state was amply sufficient, if believed by the jury, to sustain the judgment and sentence. Under the law and the facts the court did not err in refusing to sustain the demurrer to the evidence, and the motion for a directed verdict.

The first assignment of error is based upon the questions asked defendant on cross-examination by the assistant county attorney with reference to the boundary of his district and his work in Oklahoma City, which is outside of his district. We have carefully examined the record, and while many immaterial questions were asked, as were on the cross-examination of state's witnesses by counsel for defendant, we do not find anything in the rec-

ord which would justify a reversal of this case. We recognize the general rules that one can be convicted only for the crime with which he stands charged, that a witness may not be impeached on collateral matters, and that evidence of the commission of other independent crimes is inadmissible; but we also know there are many exceptions to these general rules. We do not find anything in the record which in our opinion was fundamental error and would justify this court in setting aside the judgment and sentence rendered.

Defendant's second assignment of error is based upon evidence offered in rebuttal by the state after defendant had placed his character in issue by putting character witnesses on the stand. Each had testified that they had never seen defendant intoxicated and did not know of his drinking. The witnesses in rebuttal testified of defendant coming to the place of business of Ben Hopkins on the night of January 26, 1947, the night on which he was charged with driving while under the influence of intoxicating liquor.

Leon Foster Downs testified that he was a bootlegger and delivered whisky. That on Sunday morning, about 1 o'clock, January 26, 1947, he was called to deliver a pint of whisky at the Moonlight Cafe. He did not know who had ordered it. He walked into the cafe and bought a package of cigarettes, and the defendant followed him out to the car, and said to him: "I am the man." The witness then testified:

"He pulled back his coat, and of course his gun and his badge showed, and he said: 'Do you want to go to jail or do you want to give me the whisky?' So I gave him the whisky, which consisted, I believe, of two or three pints and a fifth."

This witness testified that he was a bootlegger, selling for himself. That he had been convicted and served a term in the penitentiary, and that he had been convicted of a violation of the liquor laws in Oklahoma county and had forfeited at least 30 fines in the city court. This evidence, of course, was for the purpose of affecting the credibility of the witness, and was brought out on cross-examination. It may be noted that this purported transaction was on Sunday morning, January 26, 1947, at 1 o'clock, and that defendant was charged by information with driving while under the influence of intoxicating liquor on Sunday night, January 26, 1947, at about 9:30.

The assistant county attorney on cross-examination attempted to question defendant with reference to his knowledge of a law passed by the Legislature which provided that constables could not make arrests outside of their own districts, but the trial court sustained an objection to these questions, and instructed the jury not to consider them. These questions were immaterial, but in view of the fact that objections were sustained to same by the trial court, were not sufficient to cause reversal of this case.

No exceptions were taken to the instructions of the court, and no requested instructions were asked.

Defendant also contends that the judgment and sentence is excessive.

The statute under which defendant was charged and convicted is Tit. 47 O.S. 1941 § 93, which provides that the first offense under said statute shall be a misdemeanor with punishment by imprisonment in the county jail of not to exceed one year, or by a fine of not more than $500, or by both such fines and imprisonment.

The jury in its verdict found defendant guilty and assessed his punishment at a fine of $250 and one year in jail, but the verdict contained the statement: "We the jury recommend that the jail sentence only be suspended." This recommendation, under the law, was not binding on the trial court, and he refused to follow the recommendation.

From our examination of the entire record, and the admission of the evidence of the witness Downs with reference to the episode on the early morning prior to the arrest of defendant that night, and the recommendation of the jury, we are of the opinion that justice would best be served by a modification of this judgment from a fine of $250 and one year in the county jail, to a fine of $250 and 60 days in the county jail.

There is one phase of this case which we deem it important to discuss in this opinion. We again desire to call attention to Tit. 37 O.S. 1941 § 89, which provides:

"When a violation of any provision of this Chapter, shall occur in the presence of any sheriff, constable, marshal, or other officer having power to serve criminal process, it shall be the duty of such officer, without warrant, to arrest the offender and seize the liquor, bars, furniture, fixtures, vessels, and appurtenances thereunto belonging so unlawfully used, and to take the same immediately before the court or judge having jurisdiction in the premises, and there make complaint, under oath, charging the offense so committed, and he shall also make return, setting forth a particular description of the liquor and property seized, and of the place where the same was so seized, whereupon the court or judge shall issue a warrant commanding and directing the officer to hold the property so seized in his possession until discharged by due process of law, and such property shall be held and a hearing and adjudication on said return had in like manner as if the seizure had been made under a warrant therefor."

It will be noted that this statute sets out the procedure to be followed by officers who seize intoxicating liquor without the aid of a search warrant. It imposes the duty upon the officer who seizes or takes possession of the intoxicating liquor "to take the same immediately before the court or judge having jurisdiction in the premises" and "also make return, setting forth a particular description of the liquor and property seized, and of the place where the same was so seized."

We are of the opinion that it is meant by the above statute that the "return" be made to the court having "jurisdiction" to try the defendant for the offense committed. In the present instance this would be the court of common pleas of Oklahoma county. Ordinarily it would mean the county court of the county where the intoxicating liquor was seized. The above statute provides:

"The court or judge shall issue a warrant commanding and directing the officer to hold the property so seized in his possession until discharged by due process of law, and such property shall be held and a hearing and adjudication on said return had in like manner as if the seizure had been made under a warrant therefor."

It will be observed that there is no specific mention made in the above statute as to where the intoxicating liquor shall be kept during the time pending the hearing as to its adjudication or forfeiture. It seems that it would be important for the Legislature to make this statute more specific in view of the fact that there is always immediate danger of loss of the intoxicating liquor so seized. Many officers are not so situated that they have a safe place for the keeping of intoxicating liquor. We know that generally this liquor is turned to the sheriff of the county, who is usually prepared to keep the same pending the proper order of the court; and in our opinion this

statute should be so amended, if the Legislature deems advisable.

We also refer to Tit. 37 O.S. 1941 § 90, which is as follows:

"All liquors, property and things seized under the provisions of this act shall, upon being adjudicated forfeited to the state, be forthwith destroyed by the officer in whose custody the same is at the time of adjudication. Provided, however, that the judge or magistrate may, in his discretion, appoint a special officer for the purpose of executing the judgment of forfeiture by destroying said liquors, property and things; provided, further, that if in the opinion of the judge or magistrate, such forfeited property and things, other than liquor, is of value and adapted to any lawful use, such judge or magistrate shall as a part of the order and judgment in the case, direct that such property or things of value be turned over to the board of county commissioners to be by said board of commissioners sold and disposed of for the benefit of the court fund of the county; provided, further, that twenty five (25 per cent) per cent of all the proceeds, including all moneys and cash seized, with the other things of value, shall be paid to the party who prosecuted the search and seizure proceedings."

This section gives the court the authority, in his discretion, to "appoint a special officer for the purpose of executing the judgment of forfeiture by destroying said liquors, property and things." Under this authority granted the court, we are of the opinion that the court has the inherent right to appoint the sheriff of the county as a proper person to have the custody and possession of the intoxicating liquor, pending the determination of the adjudication or destruction of the same, if in his discretion he desires to do so.

The evidence in the instant case reveals that defendant, who was a constable, had seized liquor under the

statute above quoted, without the aid of a search warrant. Reference to the above sections of the statute is here made so that all officers may clearly know that it is their official duty to make the return provided by the statute immediately, and that the intoxicating liquor so seized cannot be appropriated to their own individual use. It is their duty under the law to make immediate return "setting forth a particular description of the liquor and property seized * * *." In the instant case the evidence revealed, if true, that defendant had seized intoxicating liquor without the aid of a search warrant. No return was made as provided by the statutes above set forth. There is not much doubt but this evidence was of material aid in causing the conviction of this defendant, and the assessment of the heavy penalty imposed by the jury. The juries of this state demand strict adherence to the law upon the part of the officers of the law. The defendant in this case, an officer of the law, was visiting different taverns in company with a woman whom he hardly knew, and they were drinking beer and whisky during the time just preceding his arrest. The fine and imprisonment sentence rendered in this case should be a warning to those similarly situated in this county, and the other counties of this state. Under the law the first offense is a misdemeanor, and a second offense is a felony. The proof of defendant's good reputation by a number of citizens of this county, and his record as a veteran of World War II, no doubt was the cause of the jury making the recommendation in the verdict that the jail sentence be suspended.

The judgment and sentence of the court of common pleas of Oklahoma county is modified from a fine of $250 and one year in the county jail, to a fine of $250 and 60

250

days in jail; and as so modified, the judgment and sentence is affirmed.

JONES, P. J., and BRETT, J., concur.