Jesse James HAYNES, Plaintiff in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A–15042.

Court of Criminal Appeals of Oklahoma.

June 24, 1970.

Jay Dalton, Public Defender, Tulsa County, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Dale F. Crowder, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Jessie James Haynes was charged by information with Rape in the Second Degree. He was sentenced upon a plea of guilty to serve Fifteen Years in the penitentiary. It is from that judgment and sentence that he appeals to this Court. He asserts two assignments of error, one of which is that the punishment was excessive. Defendant's main contention is that the trial court erred in overruling his motion to be sent to a mental hospital for an observation period of ninety days.

The defendant was represented by the public defender's office of Tulsa County. Appearing in defendant's behalf was Stewart A. Pearce, II, Acting Public Defender. And, also, James Khourie, and Marian Dyer, Assistant Public Defenders. All three attorneys appeared before District Judge S. J. Clendinning and argued in support of a Motion to Commit the defendant for ninety days observation. Mr. Dyer advised the trial judge that defendant was unable to assist in the preparation of his case because of his mental condition. He stated that he had visited with him thirty minutes in the county jail, and he was never able to understand that they were interested in building a defense, and in his opinion, he was unable to assist in his own defense.

Mr. Pearce stated he had conferred with defendant twice and had represented defendant at the preliminary hearing; that defendant appeared to him to be suffering from a severe personality disturbance, disorientation, and was completely confused as to the penalties of the crime with which he is charged, and his answers are no way responsive, and he concurred in Mr. Oylers opinion that defendant should be sent to the hospital for ninety days observation. That, in his opinion, he was unable to assist counsel or stand trial. Then defendant was interrogated by the Court, as follows:

"THE COURT: Are you married?

DEFENDANT: I used to be. My wife is supposed to have a divorce.

THE COURT: How long ago has it been that she was supposed to have a divorce?

DEFENDANT: A little better than three years.

THE COURT: Three Years.

DEFENDANT: Yes, sir.

THE COURT: And you told the girl's name a while ago. What was it?

DEFENDANT: Leota Marie.

THE COURT: Did she live with you?

DEFENDANT: Yes, sir.

THE COURT: How long did she live with you?

DEFENDANT: A little better than three years.

THE COURT: During that time did you have a wife?

DEFENDANT: No, sir. She was given to me a year ago. A little better than a year ago.

THE COURT: A year?

DEFENDANT: Yes, sir—by her mother—her mother gave away five children and every one of them had the same father.

THE COURT: Had what?

DEFENDANT: Had the same father— neither one of them. Neither two of them.

THE COURT: And did you take one or two?

DEFENDANT: One.

THE COURT: This one was the only one you took?

DEFENDANT: Yes—well, we taken the baby over there, and they had promised it to another; and the next day they came and got it and gave it to the other folks.

THE COURT: What kind of work did you ever do?

DEFENDANT: Since I have been here it has been a service station work.

THE COURT: Service station?

DEFENDANT: Yes.

THE COURT: How long have you been here?

DEFENDANT: A little better than three years—going on four.

THE COURT: Well, where were you when you were given this child?

DEFENDANT: Fort Worth, Texas.

THE COURT: You were given it at Fort Worth?

DEFENDANT: Yes, sir.

THE COURT: You were given the child eight years ago, and you moved from Fort Worth to here three years ago, is that right?

DEFENDANT: Well, by October it will be four years.

THE COURT: This coming October it will be four years that you have been here?

DEFENDANT: Yes.

THE COURT: I don't know of anything they can do for him up at Vinita. He answered every question I asked him.

MR. DYER: Now I would like to say again at this time for the record, Your Honor, in that this case is set for jury trial tomorrow, I do believe in good faith that the attorneys are respectful, and want their fees, at this particular time. I disagree with the time as it is too early.

THE COURT: *Let the record show that all the questions I asked him, which the record will disclose, he answered them all right—had no hesitancy, no trouble, even very accurate as to dates. And I feel that he is able to assist in his trial and he is able to give the information necessary. For that reason I am going to deny the order for commitment and leave the case on the docket.*

MR. PEARCE: Note our exception.

THE COURT: All right."

It appears from the question and answer session held between the defendant and the Judge, that the defendant was normal in his responses, at least the trial judge thought so, and so stated in the record.

The following day, defendant appeared with his counsel before Judge Simms, withdrew his not guilty plea, and entered a plea of guilty in the two cases with which he was charged with second degree rape. After a thorough dissertation in which Judge Simms advised defendant of all his rights to a jury trial, and the consequences of his plea, defendant plead guilty and was sentenced to serve the maximum in each case with the sentence to run concurrently.

Defendant's first contention of error is no doubt based upon the law as stated in 22 O.S.1961, § 1162, which states:

"When an indictment or information is called for trial, or upon conviction the defendant is brought up for judgment, if a doubt arise as to the sanity of the defendant, the court must order a jury to be impaneled from the jurors summoned and returned for the term, or who may be summoned by direction of the court, to inquire into the fact."

 We feel that the court has a right to determine from the evidence before him the conditions of defendant's mentality and unless there is a clear abuse of this

discretion, the Court of Criminal Appeals will not interfere with the trial judge's decision in this regard. He had before him the defendant, whom he subjected to thorough examination. The defendant answered all questions propounded by the trial judge with exactness as to dates and intelligently as to other matters. The defendant's lawyers offered no medical testimony but only their opinion based upon a couple of visits with defendant in the county jail.

This Court said in Bingham v. State, 82 Okl.Cr. 5, 165 P.2d 646:

" * * * but the existence of a doubt as to defendant's sanity must arise from facts and circumstances of a substantial character. In other words, there must exist reasons to believe that the claim of insanity made on behalf of the accused is genuine and not simulated as a means of defeating or delaying the law's penalties in cases where all other means of evading punishment would seem hopeless."

It is up to the trial judge to decide this question in the interest of justice.

This Court is of the opinion that the trial judge was justified in ruling as he did and did not abuse his discretion. Defendant's next contention that the sentence was excessive cannot be considered by this Court as there is no evidence before us as to the circumstance surrounding the crime alleged in the information. The sentence was upon a plea of guilty where defendant was more than adequately advised what the consequences or the results of a guilty plea could be. Defendant was charged with two charges of rape second degree, arising out of intercourse with the same girl who was under sixteen. The maximum penalty could have been 15 years on each charge, or 30 years. However, the judge had the sentences to run concurrently so defendant would only have to serve 15 years for both offenses.

There is nothing before us upon which we could base a reduction in sentence. We, therefore, Affirm the Judgment and Sentence of the trial court. Affirmed.

BRETT, P. J., and BUSSEY, J., concur.