Mary June PREVATTE, Appellant,

v.

The CITY OF TULSA, Appellee.

No. M–75–281.

Court of Criminal Appeals of Oklahoma.

Nov. 12, 1975.

As Amended Nov. 14, 1975.

John K. Bounds, Municipal Public Defender, Tulsa, for appellant.

Steve Booth, Asst. City Prosecutor, Tulsa, for appellee.

OPINION

BLISS, Judge:

Appellant, Mary June Prevatte, hereinafter referred to as defendant, was charged, tried and convicted in the Municipal Court, Tulsa County, Case No. 188865, for the offense of Driving Under the Influence of Intoxicating Liquor in violation of Title 37, § 275a, Tulsa Revised Ordinances. Pursuant thereto, punishment was fixed at a term of ten (10) days' imprisonment in the City Jail, and a fine of One Hundred

($100.00) Dollars. From said judgment and sentence, a timely appeal has been perfected to this Court.

The State's first witness at trial was W. L. Forester who testified that he was employed as a police officer with the City of Tulsa and was so employed on November 22, 1974, at which time his working hours were from 4:00 p. m. to midnight. On said day at approximately 11:25 p. m. he had occasion to be at the corner of 41st Street and Sheridan waiting for the light to change when he observed a black over white Continental automobile attempt to negotiate a right hand turn off of 41st Street onto Sheridan southbound, and at this time the vehicle struck the median between the southbound and northbound lanes of Sheridan. Thereafter the vehicle continued on Sheridan southbound. At this time the officer executed a U-turn, actuated his emergency equipment and pursued the vehicle approximately three blocks during which time he observed the vehicle to be moving at a slow rate of speed and the car stopped in the middle of the lane. He then identified in court the defendant as being the driver of the automobile on that evening and he further testified that after stopping the vehicle he requested the defendant to get out of the car at which time he observed the defendant to be unsteady on her feet requiring his assistance, her speech to be slurred and a smell of alcohol about her person. He further observed the defendant stagger as she proceeded to the police unit at his request. He also testified that based upon his experience he formulated the opinion that the defendant was intoxicated. He said he informed the defendant of her Miranda rights and that she was being placed under arrest for driving under the influence of alcohol. He said that while in the police unit the defendant appeared to be unaware of what was happening and that she talked about unrelated subjects. He further stated that when the backup officers, Weigel and Jones, arrived the defendant became combative and tried to leave the police unit three times. He stated that she was restrained and handcuffed, but thereafter the handcuffs were removed when she worked them loose. He said the defendant was thereafter transported to the station whereafter she requested permission to go to the bathroom and that she then refused to come out of the bathroom. Consequently, the matron was called to remove the defendant from the bathroom. During the entire period the defendant was loud and abusive.

On cross-examination he testified that he was unable to recall having heard the sound of the engine of the defendant's automobile as it struck the median next to his vehicle. He further stated that a male bystander, one Gordon Derrick, stopped and inquired about the defendant and that the defendant refused him her car keys when he offered to drive her car home. He stated that on that evening the defendant was wearing a long, close fitting evening dress. En route to the station the defendant was not handcuffed and Officer Jones accompanied him and the defendant, with Officer Weigel remaining on the scene awaiting the arrival of the wrecker.

Tim Jones testified he was a police officer with the City of Tulsa on November 22, 1974, and that at such time he was working the hours of 4:00 p. m. to midnight. At this time he and Officer Rick Weigel assisted Officer Forester on a call at 41st Street and Sheridan. He stated that upon arriving at the scene he observed the defendant and Officer Forester, and he observed the defendant's speech to be slurred and the defendant to have a smell of alcohol about her person. He testified to the fact that the defendant attempted to leave the police unit on three separate occasions and that in his opinion the defendant was intoxicated. He stated that no field sobriety test was conducted, and that to his knowledge no one administered any test. He stated that he was standing next to Mr. Derrick, a male bystander, and that he had

a "regular conversation" with him. He further testified that he accompanied the defendant and Officer Forester to the police station during which time the defendant continued to be belligerent toward Officer Forester.

Rick Weigel testified he was a police officer with the City of Tulsa and was so employed on November 22, 1974, at which time his working hours were from 4:00 p. m. to midnight. He further stated that at this time he had occasion to participate in a back up call from Officer Forester and that he observed the defendant to have an odor of alcohol about her person, that she had trouble understanding what was occurring, and further that at one point she appeared to be unsteady on her feet. He stated that based upon his experience he formulated the opinion that the defendant was intoxicated.

On cross-examination he stated that he also had a conversation with one Mr. Derrick and that he and Mr. Derrick remained on the scene after the defendant had been taken to the police station.

The defendant took the stand and testified in her behalf stating that on the 22nd of November, 1974, she met one Gordon Derrick at the Financial Club at approximately 5:30 p. m. for dinner and to discuss her re-employment. She said she had been having trouble with her car stalling and the steering mechanism locking which necessitated stopping the car momentarily, putting the transmission in park and then restarting the engine. She stated that on several occasions she had attempted to have the car repaired but she still did not know what the problem was. Before dinner that evening she consumed four Scotch and sodas with a water chaser, and that she and Mr. Derrick began eating dinner at approximately 10:15 p. m. She and Mr. Derrick left shortly after 11:00 p. m., and Mr. Derrick followed her in his car to assure her getting home safely because her car had stalled several times before leaving the parking lot. Upon attempting to make a right hand turn onto Sheridan, the car stalled and she had to restart the car. She stated that after proceeding on Sheridan she observed flashing lights behind her and that thereafter a police car pulled around her vehicle very close and stopped in front of her. She stated she thought the officer had come to assist her, but he told her to get out of the car. The defendant then testified that the officer grabbed her arm and she retrieved her purse; thereafter, the office escorted her to the police unit. While inside the police unit she was unable to find her driver's license and the officer grabbed her purse and started going through it. She further testified that she at no time refused to give Mr. Derrick the keys to her car and that the officer would not allow Mr. Derrick to drive her car home because a wrecker had already been called. She stated that the handcuffs were put on her and never removed until arrival at the station. She testified she never left the police unit until arrival at the police station. On that evening she did not feel that she was intoxicated.

Gordon Derrick testified that he had been with the defendant on that evening and that they left together and that he was going to follow her home because of difficulty which she was having with her car. He stated that upon leaving the club that evening he noticed nothing unusual about the defendant's physical state, nor anything unusual about her driving. He stated that he later came upon the scene of the arrest and was concerned about the defendant's well being. Upon arrival at the scene, he approached the officer and inquired as to what was occurring but was told to either leave or be arrested. He stated that he thereafter left the scene and parked across the street to observe the situation. Shortly thereafter he observed the back up officers leave before the wrecker arrived and that soon thereafter he followed the defendant and the arresting officer to the police station.

Tom Cook testified that he was acquainted with the defendant and that her reputation for truth and veracity in the community was good.

■ The defendant's first assignment of error asserts the trial court abused its discretion in overruling the defendant's motion for a continuance, thereby depriving defendant of her Sixth and Fourteenth Amendment rights as guaranteed by the United States Constitution and Article II, § 20, of the Oklahoma State Constitution. Defendant urges that in denying her motion for continuance defense counsel did not have adequate time to prepare for trial.

We note the record reflects that the defendant was represented by retained counsel from the 22nd of November, 1974, until the 2nd day of January, 1975, at which time the defendant's retained counsel was granted leave to withdraw as attorney of record for the defendant. We further note that approximately two weeks passed between the withdrawal of the attorney of record before the defendant sought new counsel.

The trial court's authority to grant continuances is provided for in 22 O.S.1971, § 584.[1] This Court has consistently adhered to the general rule of law that the granting or denying of a motion for continuance is addressed to the sound discretion of the trial court and the action of the trial court will not be disturbed unless it appears that the court acted in an arbitrary or capricious manner. See, *Grimes v. State*, Okl.Cr., 377 P.2d 847 (1963). We further note this Court's decision in *Winegar v. State*, 92 Okl.Cr. 139, 222 P.2d 170 (1950), wherein the defendant waited two days before trial to employ his attorney, after counsel who represented him for nine months withdrew from the case. Although defendant's first counsel had withdrawn

nine days before the scheduled trial, the defendant waited until two days prior to trial to employ other counsel. Holding that the defendant had over a week in which to make arrangements for counsel to prepare his defense, the Court affirmed his judgment and sentence ruling that the granting or denial of a continuance lies within the sound discretion of the trial court, and that under the circumstances there presented the denial of a continuance was not an abuse of discretion. This Court went on to say that a defendant charged with a felony who waits until a few days before trial to employ counsel and then asks for a postponement of the trial on grounds of insufficient time to prepare for trial has not used due diligence and denial of his motion for continuance is not error. See, *Winegar*, supra. Also, see, *Smithey v. State*, Okl.Cr., 385 P.2d 920 (1963).

In the instant case the defendant allowed two weeks to expire and approximately four days prior to the date upon which the trial was set the defendant sought other counsel. We find after a careful examination of the entire record that the defendant was ably represented at trial and in light of the record before us we do not feel the trial court abused its discretion in denying the defendant's motion for a continuance. For the reason herein stated, we find the defendant's first assignment of error to be without merit.

■ The defendant's second assignment of error asserts the evidence presented at trial was insufficient to sustain a verdict of guilty. We need only note that the testimony at trial revealed the defendant was observed operating a motor vehicle upon the street in the City of Tulsa, and upon stopping the defendant's vehicle after it had struck the median the defendant's speech was slurred, defendant staggered

1. Title 22 O.S.1971, § 584, reads as follows: "When an indictment or information is called for trial, or at any time previous thereto, the court may, upon sufficient cause shown by either party, as in civil cases, direct the trial to be postponed to another day in the same or next term."

while walking, and the defendant had the smell of alcohol about her person. The police officers further testified that based upon their experience the defendant appeared to be intoxicated that evening. After a careful examination of the record, especially in light of the testimony previously stated, we feel there was competent evidence upon which the jury found the defendant guilty. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. See, *Jones v. State,* Okl.Cr., 468 P.2d 805 (1970).

 The defendant's third assignment of error asserts that the sentence imposed was excessive and should be modified. The defendant further urges that the trial judge should have followed the jury's recommendation of a suspended sentence.

We first note that the trial court is not bound by a recommendation from the jury that the sentence be suspended. See, *Bohot v. State,* 89 Okl.Cr. 238, 206 P.2d 585 (1949). Also, this Court has previously held in the first paragraph of the Syllabus to *Wilson v. State,* Okl.Cr., 437 P.2d 467 (1968), as follows:

"A jury's recommendation of suspended sentence is a matter addressed to sound discretion of trial judge, which should be given great weight unless investigation shows conduct on part of the defendant which indicates that he is not eligible to receive a suspended sentence for the crime by him committed."

Also see, *Presnell v. State,* 71 Okl.Cr. 162, 109 P.2d 834 (1941), and *Hughes v. State,* Okl.Cr., 346 P.2d 355 (1959).

Thus the trial court was not bound by the jury's recommendation and we further note

that the punishment imposed was well within the range provided by law and does not shock the conscience of this Court. See, *Turner v. State,* Okl.Cr., 479 P.2d 631 (1971).

For the reason herein stated we find the defendant's third assignment of error to be without merit.

The defendant's final assignment of error asserts the accumulation of errors and irregularities in the proceeding, when considered as a whole, deprived the defendant of a fair and impartial trial, and denied her due process of law to which she is entitled under the Constitution of the State of Oklahoma and the United States of America. The defendant urges this Court to consider the proposition that if any of the previous assignments of error, standing alone, are insufficient to justify reversal, the entire transcript of the proceedings, when considered as a whole, are so replete with error that the defendant was deprived of the fundamental due process.

In light of this Court's disposition of defendant's first, second, and third assignments of error, and after a careful examination of the record having failed to reveal any error which would justify modification or reversal we are of the opinion that defendant received a fair and impartial trial. For the reason herein stated, we find the defendant's final assignment of error to be without merit.

In conclusion, after examining the record in light of the defendant's contentions, we find the record free of any error which would justify modification or reversal. The judgment and sentence is, accordingly, *affirmed.*

BUSSEY, J., concurs.

BRETT, Presiding Judge (dissenting).

BRETT, P. J., dissents.

I dissent to this decision. On January 2, 1975, the trial court permitted defendant's retained lawyer to withdraw from

her case. Finally, on Friday, January 17th, defendant went to the Tulsa Municipal Public Defender's office for legal assistance because her trial was set for Tuesday, January 21st. On Monday, the Public Defender filed his application for continuance because of lack of time for preparation. The trial court denied that application on the day of trial. Now, among defendant's complaints is that she was denied effective legal representation, because of the denial of her request for continuance. I believe her complaint is valid.

Defendant testified that the reason for her difficulty in negotiating the turn, after which the officer stopped her, was because she was having mechanical difficulty with her automobile. That was a fact which could have been verified had defense counsel been permitted time to make a proper investigation of all the facts. Coupled with the lack of investigation is the complete failure of the Tulsa Police to administer a sobriety test for the defendant. It is common knowledge that necessary instruments are available at the Tulsa Police Department for that purpose. I admit that three Police Officers testified that defendant was intoxicated, and that the jury must have believed them. But, nonetheless, had defense counsel been permitted time to make a proper investigation that testimony might have been overcome. In short, I believe the trial judge abused his discretion in denying defendant's request for continuance. There is little doubt concerning whether or not the prosecutor's similar request would have been granted. It is usually granted.

Secondly, it continues to puzzle me why this Court continues to treat the jury's additional statement relating to punishment, "that the sentence should be suspended," as a recommendation. I believe that any such statement added to the verdict by the jury should be followed, or the trial judge should state sufficient reasons for not following the jury's statement relative to the punishment assessed. Therefore, I dissent to this decision.