Jack Junior REYNOLDS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–471.

Court of Criminal Appeals of Oklahoma.

Feb. 13, 1978.

---

6. *Bredouw v. Wilson*, 208 Okl. 393, 256 P.2d 421 (1953).

John T. Elliott, Public Defender, Garvin A. Isaacs, Asst. Public Defender, for appellant.

Larry Derryberry, Atty. Gen., James C. Peck, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Jack Junior Reynolds, hereinafter referred to as defendant, was charged, tried by jury, and convicted in the District Court, Oklahoma County, Case No. CRF–75–4770, for the offense of Murder in the First Degree, in violation of 21 O.S. Supp.1975, § 701.1 ¶ 9. The sentence was fixed at death. From said judgment and sentence and death warrant, an automatic appeal has been perfected to this Court.

The uncontroverted evidence presented at trial revealed that the defendant and his brother Floyd had spent the evening of August 20, 1975, in Floyd's apartment sniffing paint and drinking beer. At approximately midnight, defendant left his brother's apartment, intending to go "straight home." At S. W. 33rd and S. Robinson Streets, defendant noticed a young female hitchhiker; he stopped his automobile and offered her a ride. The defendant and the girl, later identified as sixteen-year-old Rita Ann Whitley Sealey, traveled for a few blocks before stopping in front of a home at S. Harvey and 28th Streets. The defendant began to make sexual advances toward the

girl and she resisted and attempted to leave the automobile. A struggle ensued, during which the girl repeatedly screamed and honked the horn. The defendant choked and beat the girl, and stabbed her in the neck, chest and abdomen approximately twenty-eight times; and from these wounds Ms. Sealey died.

Pursuant to a radio bulletin, Oklahoma City Police Officers Mullenix and Pyle located an automobile parked in front of a home at 3400 S. Harvey, six blocks from the scene of the homicide. Upon observing bloodstains on the outside of the vehicle, the officers approached a nearby house. Receiving permission to enter, the officers observed the defendant wearing only blue jeans, with blood just above his right elbow. The officers arrested the defendant, advised him of his Constitutional rights, and transported him to the police department. Subsequently, Sergeant Robert Harvey of the Oklahoma City Police Department, returned to the residence and recovered the defendant's pocket knife from the defendant's mother.

The defendant did not deny killing Ms. Sealey, but sought to prove that his act was not premeditated. Several members of the defendant's family testified that he was a slow learner and had sniffed paint for several years. Based on the combination of those two factors, defendant's family members concluded that defendant could not distinguish between right and wrong. A specialist in toxicology testified concerning the effect on the brain and on behavior patterns of chemical agents found in paint. Psychiatrists presented by both the State and the defendant testified that defendant had no brain damage and that he was able to distinguish between right and wrong. Although all three psychiatrists agreed that defendant acted mainly from impulse, he was capable of forming premeditation.

■ As his first assignment of error, the defendant contends that the prosecutor was guilty of misconduct when he dropped a photograph in front of the jury box before the photograph was admitted into evidence.

The record reveals that at the time of the incident now complained of, the prosecutor was questioning Officer Dawson. As the prosecutor handed the officer several pictures and asked him to identify them, one photograph apparently fell to the floor. At that point, the defendant moved for a mistrial and the prosecutor responded:

"I dropped one, Judge. It wasn't intentionally. On my oath as an Officer of this Court."

In the instant case, defendant does not complain of the admission of the photographs, but only of the fact that one of the jurors could have seen the photograph prior to its introduction into evidence. While it is unclear which of the photographs was dropped, all of the photographs were subsequently admitted into evidence. We find the defendant's first assignment of error to be wholly without merit.

■ The defendant urges, as his second assignment of error, that the trial court erred by failing to grant a continuance. The defendant requested the continuance because a toxicologist named Richard Prouty, had been subpoenaed as a witness and was out of the state at the time the trial began.

This Court has consistently adhered to the general rule that the granting or denying of a motion for continuance is addressed to the sound discretion of the trial court and will not be disturbed on appeal unless the ruling was arbitrary or capricious. See, *Prevatte v. City of Tulsa*, Okl.Cr., 542 P.2d 969 (1975). In the instant case there is nothing in the ruling by the trial court that appears arbitrary or capricious. The unavailability of Prouty did not deny the defendant the use of an expert witness on the subject of the effect of paint sniffing on the brain. The defendant called Hubert E. Maxey, a specialist in toxicology, who offered testimony on the issue. Moreover, at the conclusion of Mr. Maxey's testimony, the defendant and the State stipulated that had Richard Prouty been called as a witness, his testimony would have been substantially the same as that given by Mr. Maxey. In *Fields v. State*, 85 Okl.Cr. 439,

188 P.2d 231 (1947), this Court stated in paragraph 12 of the Syllabus:

"Where the evidence of an absent witness would merely be cumulative, it is not error for the court to overrule a motion for continuance based thereon."

Also see, *Driver v. State*, Okl.Cr., 490 P.2d 1109 (1971). We find that the defendant failed to establish that he had suffered any prejudice as a result of Mr. Prouty's absence, nor is there any showing that Mr. Prouty's testimony would have been more than cumulative. Defendant's second assignment of error is therefore without merit.

■ The defendant contends, as his third assignment of error, that the defendant's Motion for Mistrial should have been sustained after it was revealed that the foreman of the jury was acquainted with one of the witnesses in the case. During the course of the trial, one of the jurors, Mr. Walcher, informed the trial court that he was acquainted with one of the witnesses, Officer Knox, who had previously testified in the case. The trial court then examined Mr. Walcher in the presence of both counsel, as to the nature of his friendship with Officer Knox and its effect upon his ability to render a fair and impartial verdict. In substance, Mr. Walcher stated that he would be able to render a fair and impartial verdict and would not be influenced by his acquaintance with the witness.

This Court has often held that in order for the defendant to receive a new trial on the ground that a juror who served on the jury was prejudiced against him, he must not only show the prejudice of the juror, but must also show that he suffered an injustice by the presence of that juror on the jury panel. See, *Wagers v. State*, Okl. Cr., 370 P.2d 567 (1962). In the instant case, the trial court thoroughly questioned the juror and was satisfied that he was impartial. In *Newton v. State*, Okl.Cr., 516 P.2d 827 (1973), we considered a similar situation and found that the trial court had not abused its discretion by refusing to grant a mistrial. We find this contention to be without merit.

As his fourth assignment of error, the defendant alleges that the trial court committed error by answering the juror's questions after the deliberations of the jury had commenced. The jurors sent a note to the trial court requesting information on several issues, including probation and parole. The trial court conferred with both counsel and gave them an opportunity to hear his proposed answer before calling the jury back into open court. Neither attorney objected to the answer, and the jurors were informed in open court that pardon and parole was a matter for the Executive Branch. This Court considered similar circumstances in *Brown v. State*, Okl.Cr., 530 P.2d 1056 (1975), and found:

"Because the communication which is now complained of occurred with the knowledge and consent of defense counsel . . . and constituted but a simple negative response imparting no additional knowledge or instruction to the jury, we find that any objection was waived, that no presumption of prejudice arose and that same did not constitute error. . . ."

Therefore, upon careful examination of the transcript, we find that the trial court committed no error by answering the jury's question.

As his fifth assignment of error, the defendant alleges that the trial court abused its discretion by denying defendant a jury trial on the question of defendant's present sanity prior to sentencing. Before the sentencing of the defendant, the trial court permitted the defendant to present witnesses on the question of his sanity. Several persons testified and at the close of the evidence, the trial court denied defendant's request.

The authority for ordering a sanity hearing appears in 22 O.S.1971, § 1162, in pertinent part as follows:

". . . if a doubt arises as to the sanity of the defendant, the court must order a jury to be impaneled . . . ."

It is well-settled in Oklahoma that the doubt referred to in the statute is that doubt which must arise in the mind of the trial court. See, *Russell v. State*, Okl.Cr., 528 P.2d 336 (1974). The trial court may look to the source of the information and motive in determining whether there is doubt which would justify a sanity hearing, and the existence of a doubt as to defendant's sanity must arise from facts of a substantial nature. See, *Laslovich v. State*, Okl.Cr., 377 P.2d 977 (1962). There must exist reasons to believe that the defendant's claim of insanity is genuine and not simulated to delay justice, and the finding of the trial court will not be disturbed on appeal unless a clear abuse of discretion is shown. See, *Haynes v. State*, Okl.Cr., 473 P.2d 299 (1970). In the present case, the trial court had ample opportunity to observe and evaluate defendant's condition, both during trial and prior to sentencing. After reviewing the transcript of the sentencing, we find no abuse of discretion by the trial court, and therefore, hold that this contention is without merit.

In his next assignments of error, the defendant urges this Court to review the Order certifying him to stand trial as an adult. The defendant contends that the Order was based upon illegally obtained evidence which rendered the Order void and, therefore, the District Court was without jurisdiction over the defendant. The record reveals that the defendant failed to appeal his certification within the statutory time allowed and we note that a defendant ordinarily must comply with 10 O.S.Supp. 1975, § 1123, to appeal from juvenile certification proceedings. Where the defendant is sentenced to death, however, we must review the certification proceedings. Assignments of error six through eleven concern the certification proceedings.

The defendant, as his sixth assignment of error, attacks the validity of his arrest and alleges that the officers did not have probable cause for the arrest. According to 22 O.S.Supp.1975, § 196, a police officer may arrest a person without a warrant:

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

In the instant case, it is beyond dispute that a felony had been committed. The arrest, therefore, could be invalid only if the officers had less than probable cause to believe that defendant had committed the felony. This Court has stated that probable cause is sufficient if at the moment of arrest the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information, were sufficient to warrant a prudent man in believing that the person to be arrested had committed an offense. See, *Duke v. State,* Okl.Cr., 548 P.2d 230 (1976). This Court has also held that the use of the term "probable cause" imports that there may not be absolute irrefutable cause. See, *Satterlee v. State,* Okl.Cr., 549 P.2d 104 (1976). The transcript of the juvenile proceeding indicates that the officers received information that a homicide had been committed, a description of a vehicle believed to be involved in the homicide, and a description of the person believed to have committed the homicide. Within six or seven blocks of the scene of the homicide the police officers identified a vehicle that was very similar to the description they had received. As the officers approached the vehicle, bloodstains were apparent on the exterior of the automobile. Noises from a nearby residence prompted the officers to investigate, whereupon the brother of the defendant invited them inside. While the officers conversed with the defendant's mother, the defendant entered the room wearing only blue jeans. The defendant matched the description given to the officers and, furthermore, appeared to have bloodstains on his arms and welts on his back. We find that the circumstances clearly amounted to probable cause for the officers to arrest the defendant and, therefore, the arrest was valid.

As his seventh assignment of error, the defendant complains that the consent given by the defendant's younger brother for the officers to enter the residence, was constitutionally invalid. The transcript reveals that the officers entered the house and no search of the house took place at that time, nor was any evidence seized which was subsequently used against the defendant. Furthermore, the defendant made no objection to the testimony of the arresting officer for the reason that the consent to enter the house was given by the defendant's younger brother, and accordingly, he did not properly preserve this assignment of error for review on appeal. Had this assignment of error been properly preserved, it would be without merit.

The defendant contends, as his eighth assignment of error, that evidence was obtained illegally from defendant's automobile. An examination of the record reflects that at the time the officers noticed the blood on the outside of the automobile and looked into the car, they were logically and properly investigating the present offense. This Court has often held that an officer, lawfully in any place, may, without obtaining a search warrant, seize from a motor vehicle any item which he observes in plain or open view, if he has probable cause to believe that the item is evidence of a crime. See, *State v. Baxter,* Okl.Cr., 528 P.2d 347 (1974). Moreover, visual observation of evidence in plain view does not constitute a search. See, *Cheatham v. State,* Okl.Cr., 483 P.2d 1172 (1971). In the instant case the officers clearly had the authority to seize samples of the blood, both from the exterior of the car and from the interior, which were in plain view. Even though the blood samples were not removed until the car was taken into custody and transported to the police station, subsequent removal at the station need not be independently justified. See, *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975).

Latent fingerprints were also removed from the interior of the automobile without a search warrant. However, having constitutionally seized evidence in plain view, the officers, having probable cause to believe other evidence relevant to the murder investigation was present in the automobile, were justified in broadening their investigation of the vehicle to include dusting for fingerprints. See, *Satterlee v. State,* supra. Even assuming that the re-

moval of the fingerprints was error, such action was merely harmless error in this case because the fingerprints were not found to be inculpatory and were not introduced in evidence. See 20 O.S.1971, § 3001. Therefore, we find no prejudice to the defendant and this allegation is without merit.

As his ninth assignment of error the defendant asserts that because the defendant and his mother were not properly informed of their constitutional rights, a confession was illegally obtained and was subsequently erroneously admitted into evidence. The transcript discloses that both of the interrogating officers stated that they had advised the defendant and his mother of their constitutional rights. See, 10 O.S. 1971, § 1109. While neither officer actually recited the exact words used, one officer testified that he had "read them off of the card that I have." We find no objection by the defendant as to the sufficiency of the foundation presented by the State regarding the giving of such rights. Moreover, the defendant was given permission to voir dire each officer regarding the incidents preceding the confession, including the Miranda rights given to the defendant, and no recitation was requested. Therefore, we find that the defendant waived any objection, and has not preserved the alleged error for review by this Court.

The defendant next complains, as his tenth assignment of error, that the record as a whole fails to satisfy the requirement of prosecutive merit. In *J. T. P. v. State,* Okl.Cr., 544 P.2d 1270 (1975), we stated:

". . . We interpret Section 1112(b) to require two ultimate findings as prerequisite to a valid certification order. The first of these is a finding that there is prosecutive merit to the complaint, which statutory phrase we construe to require a finding that a crime has been committed and that there is probable cause to believe that the accused child committed it. . . ."

The defendant contends that all the elements of Murder in the First Degree were not satisfied. The prosecutive merit

hearing is in the nature of a summary proceeding and it is not the purpose of such a hearing to establish the guilt of the juvenile. Rather, that function is reserved for subsequent proceedings. In the instant case there is clearly sufficient evidence, the testimony of the officers together with the autopsy report stipulated to by defendant, to establish that the crime of Murder had been committed. Moreover, the testimony of the eyewitness, the circumstances surrounding the defendant's arrest and the confession by the defendant establish sufficiently that there was probable cause to believe the defendant child committed the murder. We, therefore, find sufficient prosecutive merit to satisfy the prerequisite for a valid certification order.

The defendant urges, as his eleventh assignment of error, that the juvenile court abused its discretion by failing to grant the defendant a jury trial upon the issue of sanity. An examination of the transcript reveals that the defendant requested a jury trial on the question of defendant's sanity prior to the juvenile hearing, which was denied by the juvenile court. However, no other evidence appears of record to indicate whether such a sanity hearing was justified or not. This Court has often held that matters occurring prior to trial, and not shown in the record before this Court, will not be considered on appeal. See, *Coughran v. State,* Okl.Cr., 565 P.2d 688 (1977). Thus, we are unable to consider this error now alleged on appeal.

As his final assignment of error, the defendant urges that the statute under which he was convicted and sentenced to death is unconstitutional. We considered a similar assignment in *Riggs v. Branch,* Okl. Cr., 554 P.2d 823 (1976), and today we reaffirm that decision. In accordance with *Riggs,* the sentence imposed must be MODIFIED from death by electrocution, to life imprisonment at hard labor in the state penitentiary.

For the reasons set forth above, the judgment and sentence is *MODIFIED* from death by electrocution to life imprisonment

at hard labor, and as so modified, the judgment and sentence is *AFFIRMED*.

CORNISH and BRETT, JJ., concur.